# DISMISSAL OF MR. J. R. SERFASS FROM THE BAR.

ERROR TO THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY.

Argued May 12, 1887—Decided May 23, 1887.

1. By admitting an attorney to its Bar, the Court presents him to the public as worthy of its confidence in all of his professional duties and relations. If, afterwards, it come to the knowledge of the Court that he has become unworthy, it is its duty to withdraw that indorsement and thereby cease to hold him out to the public as worthy of professional employment.

2. In proceedings to disbar an attorney, charges were made and established: (1), That he had altered a recorder's receipt for a letter of attorney, so as to make it appear he had paid the recorder's fee which he had not paid, and had used the altered receipt as evidence of payment of the fee on the trial of a cause in which he was a party; (2), That, without retainer and without authority, he had appeared for the defendant in a long-summons suit before a justice of the peace and, after examining a witness, moved for and obtained a nonsuit on the ground

Statement of Facts.

that defendant was a non-resident; and afterwards a second suit having been brought by short summons, he had again appeared, produced witnesses, and moved for a nonsuit on the ground that the defendant was not a non-resident; (3), That in a suit against himself before a justice of the peace, he had endeavored by means of a false telephone message to decoy the justice from his office at the hour fixed for hearing, for the purpose of obtaining a nonsuit; (4), That he had exhibited in his professional intercourse a trifling and insincere character, which rendered him unworthy of the Court and clients, and which brought him and the profession to which he belonged into disrepute. A rule to strike from the roll of attorneys was made absolute: *Held*, that there was no error.

Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.; PAXSON, J., absent.

No. 328 January Term 1887, Sup. Ct.; Court below, No. January Term 1887.

Mr. Joshua R. Serfass, a resident of Easton, graduated at Lafayette College, studied law and was admitted to the bar of Northampton county in 1881. His principal business after his admission was conveyancing, making searches against real estate, placing money on loans and making collections. At January Term 1887, in the court below the following petition and motion were filed:

And now, January 3, A. D., 1887, the Bar Association of Northampton county, by Frank W. Edgar, P. C. Evans and R. C. Stewart, its representatives and committee duly appointed, authorized and instructed for the purpose, complain to the court and allege that Joshua R. Serfass, Esq., a member of the bar of this county, has practiced mischief and deceit, has been unfaithful to the court and to his clients, is unworthy of public confidence, and is unsafe and unfit to be trusted with the powers, duties and responsibilities of the office of attorney, and move the court to enter a rule on the said Joshua R. Serfass, Esq., to show cause why his name shall not be stricken from the roll of attorneys.

And the said F. W. Edgar, P. C. Evans and R. C. Stewart further show the court that specific complaints of professional improprieties, misconduct and dishonesty, corrupt practices and infidelities to the court and to his clients, and general complaints of misbehavior in his office of attorney, were made to the said Bar Association by several reputable persons against

the said Joshua R. Serfass, Esq., an attorney of this court and resident in the borough of Easton, in said county, but not a member of the said Bar Association.

That said complaints were referred for investigation to a special committee of said association, consisting of Simeon B. Chase, W. H. Armstrong, P. C. Evans, H. J. Steele and Aaron Goldsmith, Esqs., who heard the statements of the several persons conversant with the facts, and also heard the counter-statements of Mr. Serfass, who was invited to be present and who appeared before the said committee. The affidavits of several persons were also submitted by the complainants and by Mr. Serfass to the said committee, who, after careful consideration of all the matters laid before them, reported that Mr. Serfass had behaved improperly in his office as attorney, and recommended that the association take prompt action to secure judicial examination of his conduct.

Whereupon the said association resolved that the matter be laid before this court, and that the court be moved to enter a rule upon the said Joshua R. Serfass, Esq., to show cause why his name shall not be stricken from the roll of attorneys of this court, and appointed the said F. W. Edgar, P. C. Evans and R. C. Stewart a committee to represent the association in this proceeding, who now present charges against the said Joshua R. Serfass, and make specifications thereof as follows:

*First.* That said Serfass fraudulently altered a receipt given him by the recorder of deeds of said county, showing merely the fact that a certain instrument of writing was left for record and the amount of fees due, by erasing the cancellation of the printed words "received payment," so that the receipt appeared to show payment of one dollar and twenty-five cents by said Serfass to the said recorder.

*Second.* And that said Serfass offered said altered receipt in evidence in his own behalf, in the trial of the suit of J. R. Serfass v. J. R. Crawford, before the Honorable W. W. SCHUY-LER, President Judge of this court, on December eighth, eighteen hundred and eighty-six, in which suit he, the said Serfass, plaintiff, testified in his own behalf, and addressed the court, and claimed that said receipt showed a payment of one dollar and twenty-five cents by him to the recorder for and on behalf of the said Crawford, the defendant.

*Third.* And that the said Serfass, well knowing that he had not paid the said sum of one dollar and twenty-five cents to the recorder, produced said altered receipt to the recorder, and alleged that he had paid said sum, and that this was the voucher for the same.

*Fourth.* That said Serfass, about a year ago, when the case of Arner v. Kaniper was called for argument, willfully deceived the court and stated that B. F. Fackenthall, Esq., the opposing counsel, did not desire to be heard and was willing that the court should determine the case upon the *ex parte* argument of said Serfass, when in fact Mr. Fackenthall was sick and had requested the said Serfass to postpone the argument until he could be present and heard.

*Fifth.* That said Serfass, without authority and without retainer, appeared for the defendant in the case of Fitzer v. Eschenour, before Reuben Kolb, Esq., a justice of the peace of this county, and demanded that the proceedings be set aside, stating to the justice that the defendant was a non-resident and that a long summons had issued, and produced a witness to prove the non-residence of the defendant, and also testified to the fact himself. The suit was discontinued and a short summons issued, when, at the return day thereof, the said Serfass again appeared for the said defendant and demanded that the short summons be quashed because said defendant was a resident of Easton, in said county, and produced a witness who, with himself, testified to this fact. The justice gave judgment for the plaintiff, when said Serfass sued out a *certiorari* from the Court of Common Pleas, for the mere purpose of harassing said Fitzer, and of burdening him with costs and expense.

*Sixth.* That said Serfass was employed and retained by Henry Yegle, in 1881, on his removal from Easton, to attend to his business and to collect the rents of his wife's real estate, and to pay the interest on certain mortgages upon Mrs. Yegle's property held by Aaron Serfass, the father of said Joshua, and to account to them, the said Henry Yeagle and wife. And the said Joshua R. Serfass collected the rents for some five years, and also received sums of money from said Yegle to apply upon the said mortgages, but neglected and refused to

account to said Yegle; and while acting as attorney aforesaid for said Yegle and wife, he, the said Serfass, without notice to them, brought suits to foreclose said mortgages on behalf of his father, the said Aaron, in order to oblige the said Yegle and wife to pay the ten per cent. collection fee provided for in the mortgages as part of the costs of foreclosure to him, the said Joshua. And this, although said Yegle was willing and ready to pay the amounts due on said mortgages, and had requested said Joshua to make a statement of the amount due, which he refused to do, and purposely avoided meeting said Yeagle.

*Seventh.* That said Joshua R. Serfass was sued before Reuben Kolb, a justice of the peace in said county, and upon the return day of the summons, before the customary hour of grace had expired, he, the said Serfass, went to a telephone and, calling up said Kolb, without disclosing his name, pretended that he was at the court-house speaking in behalf of the officials there or some other person, and urgently requested the said Kolb to come to the court-house, saying, " You are wanted right away," or words to that effect, thus attempting to decoy the said justice away from his office within the hour, that he, the said Serfass, might take advantage of the justice's absence to prevent judgment.

*Eighth.* That said Serfass, several months ago, brought a suit on behalf of one Young against Eyer & Bruce, before John B. Otto, a justice of the peace of said county, and recovered judgment. The claim was afterwards settled by Serfass taking a note for the judgment and costs. When Peter S. Hulsizer, the constable who had served the process in said suit, not knowing how the case had been settled, demanded his costs, the said Serfass told him they had not been paid and he would have to sue Eyer & Bruce for them. On suit being brought by said Hulsizer against Eyer & Bruce for his costs, the case was dismissed by the justice on the admission of the said Serfass that he had taken a note for the same, which was not yet due.

*Ninth.* That said Serfass has exhibited in his professional intercourse a trifling and insincere character, which renders him unworthy the confidence of the court and clients, and

which brings him and the profession to which he belongs into reproach and disrepute.

F. W. EDGAR,

P. C. EVANS,

R. C. STEWART.

For the Bar Association.

On the filing of this petition, Mr. Serfass by his attorney, Mr. W. E. Doster, filed objections against granting the motion, together with affidavits of Valentine Hilburn, John G. Kaniper, Henry Yegle and himself, in evidence of his innocence of the charges, which objections were overruled, a rule granted and bill sealed for the respondent. The grounds of objection were embraced in an answer filed by the respondent on January 7, 1887, which answer was as follows:

' And now, January seventh, eighteen hundred and eighty-seven, the said Joshua R. Serfass, respondent, comes into court, and, for answer to the foregoing rule to show cause why his name should not be stricken from the roll of attorneys of this court, respectfully says:

*First.* That said proceedings are irregular, and said rule improvidently granted, because said rule was not entered upon a complaint supported by an affidavit, but on the unsworn statement of a committee of a bar association, of which the accused is not a member, and without furnishing him with the names of his accusers, for matters not occurring in the presence of the court, and of which the court had no judicial knowledge.

*Second.* That said proceedings are irregular, because if the charge against him be that he altered a receipt given him by the recorder of deeds of this county, by erasing the cancellation of the printed words "received payment," it amounts to an indictable offence, not committed by him in the presence of the court, or while acting as an officer of the court, and therefore he cannot be called upon to answer this rule until he shall have been tried and convicted according to law of said indictable offence, and he respectfully suggests that this court is not competent to determine in this form of proceeding that the respondent is guilty of the fraudulent alteration of a writing to the prejudice of another man's right; in other

words, of forgery, and to hear and determine disputed questions of facts involving the motives of the respondent.

*Third.* That said proceedings are irregular, because if the charge against him be that during the trial of the case of Serfass v. Crawford, he falsely testified that said receipt showed a payment of one dollar and twenty-five cents by him to the recorder, it amounts to an indictable offence, not committed by him as an officer of the court, but as a witness sworn on his own behalf, and therefore he cannot be called upon to answer this rule until he shall have been tried and convicted according to law of said indictable offence; and he respectfully suggests that this court is not competent to determine, in this form of proceeding, that the respondent is guilty of the willful giving, under oath, in a judicial proceeding, of false testimony material to the cause; in other words, of the crime of perjury and to hear and determine disputed questions of fact involving the motives of the respondent.

*Fourth.* That said proceedings are irregular, because if the charge against him be that in the case of Fitzer v. Eschenour, before Reuben Kolb, esquire, a justice of the peace, he testified falsely as to the residence of the defendant, it amounts to an indictable offence, not committed by him in the presence of the court, or while acting as an officer of the court, but as a witness called on behalf of the defendant, and therefore he cannot be called upon to answer this rule until he shall have been tried and convicted, according to law, of said indictable offence; and he respectfully suggests that this court is not competent to determine, in this form of proceeding, that the respondent is guilty of the willful giving, under oath, in a judicial proceeding, of false testimony, material to the issue; in other words, of the crime of perjury, and to hear and determine disputed questions of fact involving the motives of respondent.

*Fifth.* That as regards the other charges made, respondent says they are, on their face, of a weak and trifling character, and would not sustain the general charge that he has misbehaved in his office of attorney, and would not, if they were true, warrant the court in depriving him of his office of attorney, or even suspending him therefrom.

*Sixth.* That none of the charges or specifications are true. That he denies them as a whole and in detail, and for this

part of his answer the respondent refers to the affidavits filed by him January third, eighteen hundred and eighty-seven, on the hearing of the motion for this rule, made by the respondent, Valentine Hilburn, John Kaniper and Henry Yegle, and prays that they be made part of this his answer.

*Seventh.* That he has endeavored to keep the oath administered to him on his admission to the bar, to wit, "to behave himself in the office of attorney according to the best of his learning and ability, and with all good fidelity as well to the court as to his client," and he believes he has never violated it.

And he respectfully calls the attention of the court to the fact, apparent on the face of the charges, that neither his clients nor the court charge him with any breach of the duties comprehended in the terms of his oath. Wherefore he prays that the rule be discharged. JOSHUA R. SERFASS.

On January 7, 1887, the hearing was begun, continued and concluded in open court. On February 14, 1883, the court, W. W. SCHUYLER, P. J., HOWARD J. REEDER, J., concurring, rendered the following opinion and judgment:

On the 3d day of January last, a communication was received by the court charging Joshua R. Serfass, a member of this bar, with having "practiced mischief and deceit;" with having been "unfaithful to the court and his clients;" and with being a person "unworthy of public confidence and unsafe and unfit to be trusted with the powers, duties and responsibilities of the office of attorney." In addition to these general charges the communication contains nine specifications of alleged "improprieties, misconduct and dishonesty" on the part of Mr. Serfass, while engaged in the practice of his profession.

These are grave charges, and their gravity is increased by the fact that they are not open to the suspicion of having been made rashly, or in an improper spirit, for they are preferred by the Bar Association of this county, after a careful investigation, at which Mr. Serfass was present and heard in his own defence. The Bar Association is composed of a large proportion, we wish we could say all, of the most prominent and most highly respected members of the bar, both old and young, of this judicial district. Its chairman was the present attorney-

general of this commonwealth down to the time when he was
summoned to assume the duties of that high office. Mr. Ser-
fass is one of the youngest members of the bar, having been
admitted June 26, 1881, with nothing in his mental qualifica-
tions, or his professional achievements, calculated to excite the
slightest feeling of envy even in the humblest of his fellows.
It is not strange that charges so well accredited, and so serious
in their character, against one of its officers, should have ar-
rested the attention of the court, and a rule was promptly
granted upon Mr. Serfass to show cause why he should not be
disbarred.

The power of the court to disbar an attorney for profes-
sional misconduct is undoubted. Whilst the office of an attor-
ney is his property of which he cannot lightly be deprived, yet
it cannot be kept too prominently in view that an attorney
holds title to his office only so long as he behaves himself well.
It is unnecessary to cite authorities in support of a principle
so familiar.

Under the rule to show cause a large amount of testimony,
covering three hundred and twenty pages of foolscap, has been
taken in the presence of the court, the testimony of the re-
spondent alone occupying eighty pages, or exactly one fourth
of the entire mass. At the taking of this testimony respond-
ent was represented by most diligent and able counsel. The
court has listened patiently to everything he has had to offer
in his own defence. He has had a full and fair hearing, and
we are now called upon to decide whether the evidence sus-
tains the charges preferred against him.

The first three specifications relate to the alteration by re-
spondent of a receipt of which the following is a copy:

"Received Recorder's Office, Easton, Pa., June 11th, A. D.
1886, of J. R. Serfass Letter of Attorney from J. R. Crawford
to J. R. Serfass to be recorded.

Tax and Fees, $1.25.

Received payment,

(Signed),                    GEO. R. HESS, *Recorder*."

The receipt was originally in blank, the formal part, includ-
ing the words "Received payment," being printed. When
this receipt was delivered to respondent the words "Received
payment" had an ink line drawn across them to indicate,

Opinion of Court below.

which was the fact, that the tax and fees had not been paid, thus leaving the receipt stand simply as a receipt for the letter of attorney.

Nearly six months after this transaction, to wit, December 8, 1886, respondent had a trial in this court to recover the sum of $50 from the J. R. Crawford mentioned in the receipt, which respondent claimed to be due him for professional services. The trial was conducted by respondent, assisted by his brother, Orrin Serfass, Esq., and during its progress the above mentioned receipt was offered in evidence, as appears from the following extract from the stenographer's notes :

"Also the receipt of the Recorder of Deeds of Northampton County, which shows $1.25, paid for recording power of attorney. Objected to, as not professional services and not included in the bill. Plaintiff states that this is included in the bill, that it was money paid out for the defendant, at defendant's request. By the Court : Then perhaps it is admissible."

Two days after the trial the receipt turned up again, this time at the recorder's office, where it was produced to Mr. Hess, the recorder, as a voucher for the payment of the $1.25. An inspection of the receipt revealed to Mr. Hess the fact that the ink line across the words "Received payment" had been erased, and he charged respondent with having made the erasure. Respondent at first denied the charge, but subsequently admitted it, claiming that the erasure was made as a joke. It is now an admitted fact that respondent did make the erasure.

Respondent avers, however, that the erasure was made after the trial of his suit against Crawford. This is important, if true. But is it true? In the first place, we start out with the familiar maxim, that all things are presumed against a despoiler. In the next place the probabilities are against this theory. Respondent would have us believe that when he offered the receipt in evidence the ink line across the words "Received payment" was still there, but that it escaped his notice, and he so swears. His counsel also swears that he did not notice the ink line.

This is certainly most strange if, in point of fact, the ink line was there at the time of trial, for the words "Received payment" are sufficiently conspicuous to arrest the attention of

even a casual observer. But all doubt on this feature of the case is removed by the testimony of Mr. Fackenthall, Crawford's attorney at the trial. Mr. Fackenthall testifies that he was familiar with the dual character of the receipts issued by the recorder, and that when the receipt in question was offered in evidence he examined it, for the express purpose of seeing whether it was a receipt for the money, or only for the paper. The absence of a line across the words "Received payment" would indicate the former, and its presence would indicate the latter. As a result of this examination Mr. Fackenthall says that he is able to testify positively, and does so testify, that at the time the receipt was offered in evidence there was no such line there.

For the purpose of destroying the force of Mr. Fackenthall's testimony respondent called to the witness stand Mr. Hilburn, a respected member of this bar. But Mr. Hilburn is a very feeble old man, both in body and mind, but little better than a wreck of his former self. Even the respondent in one part of his testimony speaks of him as being "kind of docile." Be that as it may, it was manifest during the whole of Mr. Hilburn's examination that he had but a very vague idea of what he was testifying about, and at one point in his examination he became completely dazed.

But taking his testimony at its best it amounts to no more than that at *some* time respondent showed him a paper either the same as, or *similar* to, the receipt in question, with a black line through the words "Received payment," which line respondent erased in Mr. Hilburn's presence, saying as he did so, that it was for the purpose of having some fun with Sam. Yohe, the deputy recorder. When questioned in his examination in chief as to the time when this took place Mr. Hilburn replied, "I am not sure excepting what I got from Mr. Serfass; *beyond that I know nothing.*" Considering the uncertainty as to time, and the ease with which a feeble old man like Mr. Hilburn, having no interest in the matter, could be imposed upon by a false paper, we attach no importance whatever to his testimony.

The only other evidence bearing directly on the question as to the time when the erasure was made is to be found in the testimony of the respondent himself. We may as well say

here that we do not propose to refer in detail to any portion
of respondent's testimony, for the reason that we are con-
strained to say that we do not believe it. It is in conflict, on
too many material points, with the testimony of too many
witnesses of undoubted integrity, to possess any value. The
coolness with which respondent denounced the sworn state-
ments of such men as Mr. Fackenthall, Mr. Hess, Mr. Sandt,
Esquire Kolb, Mr. Yohe and others, as false, was one of the
features of this investigation. " I said in my haste, all men
are liars," exclaims the Psalmist. But respondent did not
have the excuse of haste, when he took the stand against the
formidable array of witnesses named above.

But it is said that Mr. Fackenthall, Mr. Sandt and Esquire
Kolb testified under feeling, and considerable time was occu-
pied in the attempt to make this appear. Concede the fact to
be as claimed ; it does not follow that a witness who testifies
under feeling will not tell the truth. An imputation to the
contrary, so far as the witnesses just named are concerned, is
entirely lost upon the court.

We return to the receipt. Two very damaging facts in con-
nection with this paper are wholly undisputed. These are,
first, that respondent, in a suit in which he was the plaintiff,
offered the receipt in evidence as the basis of a claim for
money paid by himself, whereas it was not a receipt for money
paid, but only for a paper ; and second, that respondent de-
liberately altered this receipt, so as to make it a receipt for
money paid.

Respondent says that when he offered the receipt in evi-
dence, he thought it was a receipt for money paid. When we
consider that the case on trial was his own, with the merits of
which he is presumed to have been familiar, the mind natu-
rally hesitates before accepting this statement. But assuming
it to be true, it does not relieve respondent from the conse-
quences of his subsequent misconduct. He admits that he
discovered the real character of the receipt the next day after
the trial.

When he made that discovery he knew that he had just
gained a verdict on evidence of which the receipt formed a
part, and he could not tell but that the receipt had turned
the scale in his favor. Under such circumstances his clear

duty was to have gone to the opposing counsel, the instant that he discovered his mistake, confess the mistake and offer to surrender his verdict. Any lawyer having the slightest conception of professional propriety, to say nothing of professional honesty, would have so acted.

Respondent pursued a very different course. Instead of confessing his mistake, he deliberately goes to work, he would have us believe, to destroy the best evidence of it, by altering the receipt so as to make it correspond with what he claimed it to be at the trial; and instead of surrendering his ill-gotten verdict, he has indignantly spurned overtures made to him on that subject. This is bad enough, but it is not the worst. [We are fully satisfied from the -evidence that respondent altered the receipt before the trial of the Crawford suit, for the purpose of that trial, and for the further purpose of deceiving the recorder.

The first three specifications are therefore sustained and disbarment must follow without reference to the remaining specifications.] [1] Attorneys have been disbarred for less grave offences; as in Gates' Case, 17 W. N. 142, for detaching a receipt from an execution, although the attorney was not actuated by a sordid motive; as in Dicken's Case, 67 Penn. St. 169, for making an opposing attorney drunk to obtain an advantage over him at the trial; and as in Hirst's Case, 9 Phila. 216, for imposing on the court a false replevin bond. In these cases the attorneys sinned through overzeal for their clients. In the present case respondent has not even that weak excuse.

And here we may say in passing that the object of disbarment is not punishment, " but to protect the court and the public against an attorney guilty of unworthy practices in his profession; " Davies' Case, 93 Penn. St. 116. " By admitting an attorney, the court presents him to the public as worthy of its confidence in all his professional duties and relations. If afterwards it come to the knowledge of the court, that he has become unworthy, it is its duty to withdraw that indorsement and thereby cease to hold him out to the public as worthy of professional employment. . . . . . The offence need not be such as to subject the attorney to indictment. If it show such a lack of professional honesty, as to make him

unworthy of public confidence, it is sufficient cause for strik-
ing his name from the roll."—Ibid.

As to the remaining specifications a brief reference to some
of them must suffice.  [In the case of Fitzer v. Eschenour, a
suit before a justice of the peace, the defendant was sued with
a long summons.  The evidence satisfies us that respondent
appeared in that suit for the defendant, not only without a
retainer, but without authority, and moved for and obtained
after examining a witness on the subject a nonsuit, on the
ground that the defendant was a non-resident: That a second
suit was then brought with a short summons, on the return
day of which the respondent again appeared, and produced
witnesses to show that the defendant was *not* a non-resident,
and moved for a nonsuit on that ground.][2]

[We are also satisfied, as charged in the seventh specifica-
tion, that respondent, in a suit against himself, before Esquire
Kolb, endeavored to decoy the justice from his office at the
hour fixed for the hearing by means of a false telephone mes-
sage, for the purpose of obtaining a nonsuit in his own be-
half.][3]

[The last specification is, that the respondent has exhibited
in his professional intercourse a trifling and insincere charac-
ter, which renders him unworthy of the confidence of the
court and clients, and which brings him and the profession to
which he belongs into reproach and disrepute.  We also think
that this specification is sustained.][4]

There is another matter which, although not embraced in
any of the specifications, demands a passing notice.  When
respondent first came for admission to the bar his application
was rejected.  On his cross-examination in the present pro-
ceeding he was asked the question if this were not so.  He
admitted the fact, but immediately followed up his admission
by a statement that his rejection was due to the animosity of
Mr. Fox, a member of the board of examiners.  The present
writer was also a member of that board, and has very good
reason to know this statement to be entirely devoid of truth.

Respondent was rejected because it was the unanimous
opinion of the board of examiners that he did not possess the
requisite qualifications for admission to the bar.  In the defi-
nition of legal terms, involving the exercise of mere memory,

he seemed to be quite ready, but in the apprehension of legal principles, appealing to the reasoning faculties, he was wholly deficient. And when with better success respondent came a second time for admission, it is an open secret that the board of examiners in recommending his admission, took counsel of their sympathies, and not of their better judgment.

Now, the question naturally arises, why did respondent volunteer the statement as to Mr. Fox, with the certainty that the falsehood which it conveyed would be presently detected? We can find no answer to this question, except on the theory that there is an inherent defect in the respondent's moral and mental organism. Indeed, this is the only theory on which the greater part of his professional conduct can be satisfactorily accounted for.

Allusion has already been made to the manner of his admission to the bar. We would suppose that a person entering the portals of a high and honorable profession, under such circumstances, would come in a chastened spirit. Not so, the respondent. It was soon discovered that he was puffed up by most inordinate self-conceit. He seemed to regard with contempt the junior members of the bar, and went "gunning," to use his own expression, as testified to by Mr. Yohe, for larger game. His manner has been aggressive from the beginning, and towards such of his brethren as have incurred his ill-will it has been insolent and vindictive. These facts are a part of the unwritten history of the bar, and we refer to them here to show that the disease with which the respondent is affected is too deeply seated to be cured by a mere temporary suspension.

It is due, however, to the respondent that we should say, and we say it with unfeigned pleasure, that in certain lines of business, not connected with his profession as attorney, such as placing loans, collecting rents, and the like, the evidence shows that he has acted with strict honesty. It is only when he undertakes to play the lawyer—we use the word "play" designedly—either for himself or others, that he loses his head, and his moral perceptions become completely blunted. It needs no argument to show that a person thus unfortunately constituted is not a fit person "to be entrusted with the powers, duties and responsibilities of the office of attorney."

Whatever view the Supreme Court may take of our action

there cannot be any doubt as to the propriety of this investigation, and we tender the sincere thanks of the court to the learned committee of the Bar Association who have rendered such valuable assistance. Their duties have been both unpleasant and onerous, and yet they have not faltered, but have conducted the investigation with delicacy and· fairness to the end. They deserve well of the people of this entire county for their disinterested efforts to preserve the·integrity and honor of the profession to which they have pledged their allegiance, and of which they are such worthy members.

And now, February 14, 1887, the rule to show cause why Joshua R. Serfass shall not be disbarred is made absolute.

A bill having been sealed upon exceptions to this judgment, the respondent took this writ, assigning that the court erred:

1, 2, 3, 4. In finding the respondent guilty of· the first, second, third, fifth (in part), seventh and ninth specifications, in those parts of the opinion embraced respectively in [ ] [1] [2] [3] [4]

5. In not acquitting the respondent of the remaining specifications, to wit : the fourth, sixth and eighth.

6. In going in the opinion, outside the charges and specifications, into the circumstances surrounding the admission of the respondent to the bar, his " mental and moral organism," and his demeanor to the junior members, as part of the unwritten history of the bar—matters concerning which no testimony was taken, and which respondent had no opportunity to answer.

7. In making the rule to disbar the respondent absolute.

*Mr. W. E. Doster*, for the plaintiff in error :

1. The cases relied upon are not authority for such severity. The office of an attorney is his property and he cannot be deprived of it, unless by the judgment of his peers and the law of the land : Austin's Case, 5 R. 191 ; Dicken's Case, 67 Penn. St. 169 ; *Ex parte* Robinson, 19 Wall. 505 ; *Ex parte* Garland, 4 Wall. 333 ; Pitt v. Yalden, 4 Burr. 2061 ; Ingersoll's Case, 9 Phila. 216 ; Davies' Case, 93 Penn. St. 116 ; Gates's Case, 17 W. N. 144 ; O'Grady's Case, 4 W. N. 199 ; Deringer's Case, Idem 200.

2. It was error not to acquit the respondent of specifications

4, 6, 8. All the cases decided in this state show that the courts uniformly pass on each charge separately and then either acquit or convict: Dicken's Case, 67 Penn. St. 177; Gates' Case, 17 W. N. 142. This might be of little importance, were it not that it is precisely in the matter of these charges that it appears clearly that the testimony by which the other charges are sought to be supported, is not reliable.

We ask the court to review the findings in light of this combination of juniors; a combination against whose power we hoped the court below would shield us, and hoped in vain. Lord Bacon says: "A judge ought to prepare his way to a just sentence, as God useth to prepare his way, by raising valleys and taking down hills; so that when there appeareth on either side a high-hand, violent prosecution, cunning advantages taken, combination, power, great counsel, then is the virtue of a judge seen to make inequality equal."—Essay on Judicature.

The inequalities were not made equal in this cause, and hence we claim the findings and sentence are not just.

*Mr. F. W. Edgar* (with him *Mr. P. C. Evans* and *Mr. R. C. Stewart*), in support of the decree:

Cited § 73 act of April 14, 1834; GIBSON, C. J., in Austin's Case, 5 R. 203; Lord MANSFIELD in *Ex parte* Bronnshall, Cowp. 829, cited in Randall's Case, 11 Allen 480; MERCUR, J., in Davies' Case, 93 Penn. St. 121; Gates's Case, 17 W. N. 142.

PER CURIAM:

We have given this case a careful consideration. The right of an attorney and the duty of the court must both be regarded. The public can be properly protected through the action of the court only. We adopt the language used in Davies' Case, 93 Penn. St. 121, as a correct statement of the obligation of a court: "By admitting an attorney to its bar the court presents him to the public as worthy of its confidence in all his professional duties and relations. If, afterwards, it come to the knowledge of the court that he has become unworthy, it is its duty to withdraw that indorsement and thereby cease to hold him out to the public as worthy of professional employment."

The charges made against Mr. Serfass, if true, are certainly

such as to justly destroy the confidence of the court and of the public in him as an attorney. He was given a full opportunity of being heard, of refuting the charges and of rebutting the evidence given to sustain them. In the court below, as well as here, he had learned, able and zealous counsel to present his case. Yet the court found the main charges were proved. While some of the language in the opinion may not have been necessary for a proper determination of the case, yet we cannot declare as matter of law that it was error for the court to state all the reasons for its action. A review of the evidence and giving to it its proper weight fail to convince us that the court did not arrive at a correct conclusion.

Both the learned judges concur in holding that Serfass had committed such acts as justly required him to be disbarred and his name to be stricken from the rolls as an attorney. We are not able to find any valid reason for holding their conclusion to be erroneous.

Judgment affirmed.