(75 Misc. Rep. 66.)

## In re LANNON.

(Surrogate's Court, New York County. December, 1911.)

1. EXECUTORS AND ADMINISTRATORS (§ 221*)—CLAIMS AGAINST DECEDENT—SERVICES.

Where sisters have long since ceased to live with each other, have no homes of their own, and are dependent on their labor for their livelihood, and are brought together by the illness of one of them that ends in her death, the presumption that the board and services rendered are intended to be gratuitous is not applicable.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 901–903½, 1858–1876; Dec. Dig. § 221.*]

2. EXECUTORS AND ADMINISTRATORS (§ 221*)—CLAIMS AGAINST DECEDENT—SERVICES.

Where a sister rendered services to a sick sister during her last illness, in the absence of satisfactory evidence of their value, they will not be estimated above the wages which she usually received in her customary vocation of a cook.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 901–903½, 1858–1876; Dec. Dig. § 221.*]

In the matter of the settlement of the account of Bridget Lannon, administratrix. Decree rendered.

Robert A. B. Dayton, for objectors.
Gustav Goodmann, for administratrix.

FOWLER, S. Objections on the part of the mother and the half-brothers of the intestate have been filed to the account of the administratrix. The items objected to are principally two: (1) A payment of $136 by the administratrix for board of the intestate claimed to have been furnished by the intestate's sister Mary Ressler to intestate during her last illness. Mary Ressler, Barbara Gallagher, the intestate, and the administratrix were three sisters. (2) A payment of $225 to herself by the administratrix for her services as nurse, rendered to the deceased sister during the last illness of such intestate, is also the subject of a separate objection.

It appears that the intestate and her two sisters when in health lived apart in New York the ordinary lives of hard-working people. The objecting relatives live in Ireland. That the three sisters at the time of the death of intestate were all living together for convenience in an exigency did not constitute them, I think, members of one "family," as the term "family" is understood in law. The intestate came to die in the temporary home of Mary Ressler, who was then employed as a caretaker of the residence of a property holder in this city. They occupied the basement of this residence. The sister claiming as nurse was by occupation a cook, and she left her employment to nurse the intestate in the place of abode indicated, during the illness which had a fatal termination. The estate of intestate in the aggregate is very small, and these claims, if allowed in full, will exhaust it. Such are the relevant facts for the application of principles of law to this matter.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1] I shall consider first the payment by the administratrix to the sister for board furnished to intestate. The proof of a payment by the intestate herself fo $40 to the caretaker on account of board furnished by the latter is important, as it tends to establish a contract relation and to rebut presumptions of law otherwise applicable to this claim. This proof was furnished by a third and disinterested person. In no other way was there any proof of an express contract by intestate to pay board, and no exact proof of the value of the board actually furnished was presented to me. Any adjudication on my part is therefore full of technical difficulties. Is the claim for board to be based on an express contract, or is it to be based on an implied contract? To raise an implication of contract in this matter is the more difficult problem of law. An interesting discussion of the legal distinction between the two classes of contractual obligations, express and implied, may be seen in People ex rel. Dusenbury v. Speir, 77 N. Y. 150, 151, where it is said:

"That implied or constructive contracts are similar to the constructive trusts of courts of equity, and in fact are not contracts at all."

But a full consideration of the subtle distinction only indicated in that case would lead us into one of the largest fields of disputation and scientific dicussion in the whole region of the common law of contract, and I shall avoid entering on it at this time for the reasons now given.

I am inclined to think that my solution of the claim for board must rest, if sustainable at all, on the theory of an express contract. The counsel for the objectors very properly presses upon me an indisputable proposition of law that there is no presumption, in the absence of an express contract, between members of the same family, that one will pay the other for board or services rendered. Williams v. Hutchinson, 3 N. Y. 312, 316, 53 Am. Dec. 301; Bowen v. Bowen, 2 Bradf. Sur. 336; Keller v. Stuck, 4 Redf. Sur. 294. This proposition will be assumed, with some limitations, to be accurate. It is founded on the organization of the family where mutual and reciprocal services are assumed to be gratuitous or in the common interest of the family institution. But in this matter I am inclined to think that an actual contract relation was established, so that the well-known principle just referred to is not precisely applicable to the facts presented to me.

It does not seem to me that the very proper legal presumption— that services or board furnished by one member of a common family to another are to be taken as voluntary or gratuitous—ought to apply in the case of these poor women now before me. They had long ceased to constitute one family in law. Each had gone out to gain her separate existence. Each was independent of the other when in health, and they had simply come together again by stress of the sad circumstances in which they found themselves for the time being. But as the caretaker presumably paid no rent, and the food of a sick and dying sister could not have been very costly, I am inclined to think that the claim for board furnished intestate is too great. I will find that it was worth no more than half the amount claimed; that.

is to say, $68 instead of $136. This will leave something for the mother and the kindred in Ireland.

[2] I come next to the claim of the administratrix herself for $225, the alleged value of her services rendered as nurse to the intestate. Before this claim can be allowed as a payment, its validity must be established by legal proof (Code Civ. Proc. § 2731), and not by the testimony of the administratrix herself, as she is incompetent for that purpose by reason of interest (Code Civ. Proc. § 829). The only legal evidence of an express contract by the intestate to pay the administratrix for her services rendered as a nurse was furnished by Mary Ressler, the other sister, who was probably not incompetent for this purpose, or, if she was, no objection was interposed. I think her testimony in any event was against her interest, and it tends to show that the intestate was to pay the administratrix something for the nursing, and therefore that the ordinary presumption, that the service was voluntary and gratuitous, was sufficiently rebutted to allow me to find a contractual employment to nurse. If so, the only remaining question concerns the value of the nursing services. The administratrix was not a professional nurse, and I shall therefore ignore the testimony of the physician who testified to the effect that the value of her services was $15 a week. The surrogate himself is quite as competent from the evidence furnished to determine the value of the services of one who is not a trained or professional nurse, as is the physician. Before the nursing began, as the evidence discloses, the administratrix was employed as cook at $30 a month. During the 15 weeks of nursing, the administratrix could have gained, therefore, as cook $142.50. This sum she forfeited by her employment as nurse. This then is the true measure of the value of her services in this matter. I have no doubt, from the highly respectable demeanor of this elderly administratrix on the witness stand, that her services as an untrained nurse were faithful and good of their kind, and certainly the intestate was deeply sensible of this fact, as the testimony discloses. I doubt if the services as nurse exceeded in value that of the administratrix's other services in her regular capacity in which she was trained. I therefore find that the administratrix is justly entitled to receive $142.50 for her services rendered as nurse to the intestate. I am sensible that this conclusion may seem somewhat informal, but I am satisfied that I have not strayed far from the true legal principles. It is, in any event, the only conclusion that the pleadings as framed, and the testimony as adduced, permit me to reach. The other objections to the account I do not sustain. No costs will be allowed, so as to enable the administratrix to remit the maximun sum possible home to the Irish relations of the intestate. I trust that this conclusion will seem just to all concerned, as further litigation or contention among these poor people would be deplorable in the extreme.

Decreed accordingly.