HIGGS, Respondent, v. BIGELOW, Appellant.

(164 N. W. 89.)

(File No. 4133.   Opinion filed August 30, 1917.)

1.  **Witnesses—Suit for Services as Nurse to Decedent—Value of Services, Testimony of Physicians, Whether Privileged?— Statute.**

    Testimony of a physician who attended decedent in his illness, and who attended decedent's wife during her last illness, as to the general character and value of services of a nurse who acted as such for decedent and for his wife, is not

privileged, under Code Civ. Proc., Sec. 538, Subd. 3, providing that a physician cannot, without consent of his patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient; since, in giving such testimony, he did not testify to. any such information, etc.

2. **Executors and Administrators—Evidence—Claim for Services Rendered Decedent Relative, Whether Gratuitous—Implied Contract to Pay.**

In a suit by one who, being a sister-in-law of decedent's wife, sued decedent's administrator for value of services rendered decedent and his wife as nurse, for money expended in railroad fare at decedent's request and for board and room furnished decedent's wife, held, that, it appearing that decedent acknowledged his indebtedness to plaintiff for the railroad fare and for the nursing. of him, also for the rooming and board of his wife, and that plaintiff and husband while stopping with decedent were required to and did pay his board, and there being no evidence from which inference arose that the services might have been intended as gratuitous had the parties. been strangers, such services were not gratuitously performed; nor was the relationship between the parties such as to rebut the presumption of an implied contract to pay for the services; which presumption arose upon the facts shown as to performance of the services.

3. **Appeals—Error—Evidence Against Administrator, Admissibility —Other Sufficient Evidence—Harmless Error.**

Where, in a suit for value of services rendered by plaintiff as nurse of decedent and his wife, it appeared from other evidence of facts and circumstances that services were performed from which an implied contract to pay therefor arose against decedent, held, that the objection, on appeal, to testimony of plaintiff's husband that decedent acknowledged to him his indebtedness to plaintiff and his intention to pay for the services, on ground that, because of plaintiff's coverture, and because she was living with and supported by her husband when the services were performed, the right of action originally accrued to her husband, and that his testimony was incompetent under Code Civ. Proc., Sec. 486, will not avail; since admission of such evidence was not prejudicial error.

4. **Evidence—Trial to Court—Admission of Incompetent Evidence— Presumption of Disregard of—Rule.**

It will be presumed, upon trial to court, that the admission of evidence, if incompetent, was disregarded.

Appeal from Circuit Court, Moody County. Hon. JOSEPH W. JONES, Judge.

Action by Nellie J. Higgs, against James T. Bigelow, as administrator with the will annexed of the estate of Walter H. James, deceased, to recover for services rendered and moneys expended. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*George Rice*, and *Lewis Benson*, for Appellant.

*Ira F. Blewitt, for* Respondent.

(1) To point one of the opinion, Appellant cited: Finigan v. Sioux City, 112 Iowa, 232, 83 N. W. 97.

Respondent cited. Vol. 40, Cyc. 2384.

(2) To point two of the opinion, Appellant cited: Murphy v. Murphy, 1 S. D. 316; Williams v. Williams (Wis.) 89 N. W. 835.

Respondent cited: Harter's Estate, 148 N. Y. S. 765; In re Lannon, 134 N. Y. S. 974; 18 Cyc. 413, 414; Notes in Vol. 11, L. R. A. (N. S.) 883; Glenn v. Gerald, 64 S. C. 236, 42 S. E. 155.

SMITH, J. Respondent sued appellant as administrator of the estate of James, deceased, upon four causes of action: "First, for money expended by plaintiff for railroad fare upon request of decedent in 1910, in traveling to Columbus, Ohio; second, for services rendered decedent as nurse, at Columbus, Ohio; third, for board and room furnished decedent's wife in 1911; fourth, for board and room and services as nurse furnished the wife of decedent in her last illness between December, 1913, and February, 1914. The answer is a general denial to the four causes of action and an allegation that as to the second, third, and fourth the services and the board and lodgings specified were furnished gratuitously to the persons named, as relatives and friends, and without expectation of pay therefor. A jury was waived, and the trial court entered findings and judgment for plaintiff on all four causes of action. Defendant appeals from the judgment and an order overruling a motion for a new trial.

[1] Plaintiff called as a witness, to prove her services as a nurse, and the value thereof, a physician who attended deceased during his illness at Columbus, Ohio, in 1911, and for the same purpose called the physician who attended the wife of decedent during her last illness at plaintiff's home in Flandreau. Appellant objected to this testimony on the ground that a physician is not

competent to testify to any communication made to him, or to
anything he saw or heard while attending his patient, the same
being privileged communications.    Subdivision 3 § 538, Code
Civil Procedure, provides:

"A physician or surgeon cannot, without the consent of his
patient, be examined in a civil action as to any information
acquired in attending the patient which was necessary to enable
him to prescribe or act for the patient."

We deem it wholly unnecessary to review or discuss the
numerous decisions under similar statutes, cited by appellant. The
general policy of these statutes is well understood.    It is suf-
ficient to observe that these physicians testified only to the gen-
eral character and value of the services rendered by plaintiff as
a nurse, and were not examined and did not testify to any infor-
mation acquired in attending their patients, necessary to enable
them to prescribe or act for such patients. Booren v. McWilliams,
26 N. D. 558, 145 N. W. 410, Ann. Cas. 1916 A, 388; Armstrong
v. Railroad Co., 93 Kan. 493, 144 Pac. 847; Carmody v. Tract.
Co., 43 App. D. C. 245, Ann. Cas. 1916D, 706; 45 Cyc. 2384;
Johnson v. Shaver, 37 S. D. 397, 158 N. W. 735.

[2] Appellant's most strenuous contention is that the expendi-
tures made and the services rendered were gratuitious, and that
the evidence is sufficient to sustain a recovery.    The expenditure
of money sued for and the rendition of the services and their
value are undisputed.    Appellant's contention is founded wholly
upon the alleged family relationship between plaintiff and the
decedent, James, and his wife.    Clara James was a sister of
Archie Higgs, plaintiff's husband.    The decedent, Walter H.
James, and his wife resided in Columbus, Ohio, in 1911, and
later moved to California, where they resided and had their
home as long as they lived.    Plaintiff was a trained nurse, though
not regularly engaged in that work while living at her home.    In
January, 1910, decedent, Walter H. James, was suffering from a
protracted illness at his home in Columbus, Ohio.    Early in
January, plaintiff went to Columbus, and between January 7, and
March 10, 1910, at the home of Walter H. James, nursed and
cared for him during his illness.    About the 1st of May, 1911,
Clara James, wife of Walter H. James, came to the home of
plaintiff in Flandreau, for the purpose of looking after his prop-

erty there, and superintending the building of houses thereon. While performing this service for her husband she roomed and boarded at plaintiff's home in Flandreau. For such room and board plaintiff claims $125. In the month of December, 1913, Clara James, while on her way from her home in California to the Mayo Hospital at Rochester, Minn., stopped at plaintiff's home at Flandreau, was taken seriously ill, and died there on the 18th day of February, 1914. During her said illness, plaintiff furnished her board, lodging, and nursing services of the value of $225. During the winter of 1912-1913, plaintiff and her husband were in California, and for a time stopped at the home of Walter H. James and his wife, and while there were required to and did pay board to Walter H. James. Plaintiff's husband was permitted to testify that while at the home of Walter H. James in California, he had a conversation with James, in which he acknowledged his indebtedness to the plaintiff for the money expended by her in going to Columbus, Ohio, in 1910, and for her services as nurse while there, and also acknowledged his indebtedness to plaintiff for boarding and rooming his wife, Clara James, at Flandreau, during the year 1911, and said that he intended to pay plaintiff for her services and expenditures. This evidence was received over objections, which will be referred to later. There can be no doubt that expenditures and services performed under like conditions for persons who were strangers to plaintiff would be sufficient upon which to found an implied promise to pay the reasonable value thereof, barring any question as to plaintiff's coverture.

There is not a scintilla of evidence in the record from which it could be inferred that these services might have been intended to be gratuitous, if the parties had been strangers. It is appellant's contention, however, that the relationship shown to exist between the parties was such as to rebut the presumption of an implied contract to pay therefor. It is sufficient to observe that the relationship disclosed by the record is not such as to constitute any evidence whatever that the services rendered were intended to be gratuitous. The circumstances of illness and of business interests on the part of the Jameses at Flandreau, and the fact that plaintiff and her husband were required to pay for board and lodging at the James' home in California, plainly rebut any presumption

that members of either family were regarded as guests of the other, and the record shows affirmatively that the Jameses were not invited guests on the occasions in question. The following authorities are decisive. Harter's Estate (N. Y. Sur.) 148 N. Y. Supp. 766 et seq.; Hartley v. Hartley's Estate, 173 Mo. App. 18, 155 S. W. 1099; In re Lannon, 75 Misc. Rep. 66, 134 N. Y. Supp. 974; Wence v. Wykoff, 52 Iowa, 644, 3 N. W. 685; Leitgabel v. Belt, 108 Wis. 107, 83 N. W. 1111; 19 Cyc. 456; 18 Cyc. 413, 414; Moore v. Renick, 95 Mo. App. 202, 68 S. W. 936.

[3] The record discloses that plaintiff was a married woman living with and supported by her husband when the transactions sued upon occurred. It is appellant's contention that, inasmuch as plaintiff was a married woman living with and being supported by her husband in his own home, the right of action upon these claims for services and board originally accrued to and vested in her husband, Archie Higgs, and not in plaintiff, and that the trial court therefore erred in permitting Archie Higgs to testify to the conversation with decedent, James ,at his home in California, in which James acknowledged his indebtedness to plaintiff and his intention to pay for the services referred to in the first three causes of action. Subdivision 2, § 486, Code of Civil Procedure, provides:

"In civil actions or proceedings by or against executors, administrators * * * neither party, nor his assignor, nor any person who has or ever had any interest in the subject of the action adverse to the other parties, or to his testator or intestate, shall be allowed to testify against such other party as to any transaction whatever with or statement by the testator or intestate. * * *"

It must be conceded that if plaintiff's husband, Archie Higgs, has or ever had any interest in the subject-matter of these causes of action, the trial court erred in permitting him to testify to the statements of James above referred to. But no question is presented by the record as to plaintiff's right to maintain this action at the time it was commenced; the interest of the husband being urged only as a fact disqualifying him as a witness. It was not attempted to prove an express contract between plaintiff and decedent. The right to recovery, if it existed, must therefore rest upon implied contract. We are entirely satisfied that decedent

became liable upon implied contract for the services of plaintiff, either to plaintiff herself or to her husband, Archie Higgs, and that such liability sufficiently appears from the findings of the trial court, and the circumstances disclosed by the evidence, regardless of the alleged statements or admission of decedent, testified to by Archie Higgs. Assuming, therefore, that Archie Higgs himself once had an interest in the subject of the action which would render him incompetent as a witness, there was ample evidence to sustain the finding of the trial court, regardless of such incompetent evidence. The error of the trial court, if conceded, therefore, would not appear to be prejudicial to appellant's rights.

[4] Furthermore, it will be presumed upon a trial to the court that such evidence, if incompetent, was disregarded. Re McClellan, 20 S. D. 498, 107 N. W. 681; Easton v. Cranmer, 19 S. D. 224, 102 N. W. 944; Mead v. Mellette, 18 S. D. 523, 101 N. W. 355; Bowdle v. Jencks, 18 S. D. 80, 99 N. W. 98; McKinnon v. Fuller, 33 S. D. 582, 146 N. W. 910.

Numerous errors are assigned upon the record, but the foregoing disposes of all of them which we deem of sufficient importance to merit discussion. The judgment and order of the trial court are affirmed.

WHITING, J., not sitting.