In the Matter of the DISCIPLINE of William M. RENSCH, as an Attorney at Law.

No. 13739.

Supreme Court of South Dakota.

Argued Nov. 16, 1982.

Decided Jan. 5, 1983.

R. James Zieser, Tyndall, for the Disciplinary Bd., South Dakota Bar Ass'n, complainant.

Robert F. LaFleur of LaFleur & LaFleur, Rapid City, for respondent.

## ORIGINAL PROCEEDING

FOSHEIM, Chief Justice.

Respondent, William M. Rensch, was admitted to practice law in this State on May 31, 1950. He has gained a reputation of successfully defending people charged with crimes. Charles M. Huth was charged with murder. At his preliminary arraignment a magistrate determined that he was indigent and the Pennington County Public Defender's Office was appointed to represent him. Mr. Huth was bound over to circuit court for trial, scheduled to begin January 5, 1981, before Judge Grosshans.

Prior to the date of trial, Mr. Huth contacted several private attorneys, including respondent, about defending him but he could not afford their fees. However, respondent agreed to assist in his defense, on a limited basis, in return for an unimproved lot Mr. Huth owned at Terry Peak in the Black Hills. Respondent advised Mr. Huth that he could transfer this property to him because the public defender's lien[1] had not yet attached to his assets. Respondent's legal opinion was subsequently confirmed by this court. *In the Matter of S.M.H.*, 306 N.W.2d 643 (S.D.1981). On January 7, 1981, Mr. Huth deeded the lot, valued at four to five thousand dollars, to respondent and respondent recorded the deed with the Lawrence County Register of Deeds on January 19, 1981. Shortly after this transfer, Mr.

---

1. SDCL 23A–40–11 reads: There is hereby created a lien, enforceable as provided by this chapter, upon all the property, both real and personal, of any person, including the parents of a minor child, for whom legal counsel or a public defender has been appointed under the provisions of § 23A–40–6 or subdivision (2) of

§ 23A–40–7. The services rendered and expenses incurred thereunder shall constitute a claim against such person and his estate, enforceable according to law in an amount to be determined by the presiding judge of the circuit court and paid by the county chargeable therefor.

Huth also gave respondent his promissory note for $5,000 with his parents signing as sureties. This note was voided by respondent prior to the March 17, 1981, hearing referred to later.

On January 5, 1981, Mr. Huth's attorneys from the Public Defender's Office and respondent informed Judge Grosshans that Mr. Huth had retained respondent to participate, on a limited basis, as his attorney at trial. This information caused Judge Grosshans concern about the status of Mr. Huth as an indigent and he wanted to insure that Mr. Huth's assets would be available to satisfy a county lien for court-appointed attorney's fees, before they would be available to pay private attorney fees. Judge Grosshans specifically asked respondent what his consideration had been so far, to which he replied, "Not a penny." Respondent did not then, during trial, or before Mr. Huth was sentenced inform Judge Grosshans about his fee arrangement. Judge Grosshans learned of the land transfer from a letter he received from Pat Schoffstall, Mr. Huth's girlfriend, during the sentencing process. In light of the court's January 5th conversation with respondent, this information prompted Judge Grosshans to hold a hearing on March 17, 1981, concerning Mr. Huth's assets. Ms. Schoffstall, Mr. Huth, Mr. Burnett (one of Mr. Huth's counsel from the Public Defender's Office), and respondent testified.

Following this hearing, Judge Grosshans made findings and concluded that respondent intentionally deceived the court and ordered that such deception be brought to the attention of the State Bar Disciplinary Board. By order of this court the Disciplinary Board formally accused respondent of conduct prejudicial to the administration of justice by misrepresenting to Judge Grosshans the status of his fee arrangement and asked that respondent be disciplined by public censure.

This court referred the matter to Judge Heege, as referee, with directions to take testimony and submit findings and a recommendation. The referee made findings in essential agreement with the facts outlined above. (Some of the referee's findings are actually conclusions of law and therefore they are not included in our outline of the facts.) The referee also found that respondent believed his fee arrangement with Mr. Huth was protected by the attorney-client privilege and that "he would have claimed the privilege on Huth's behalf had he been asked specifically about such fee arrangement, which belief was reasonable under the circumstances." The referee recommended that we dismiss the accusation. While the findings of the referee are not conclusive, we must consider them carefully because the referee had the advantage of seeing and hearing the witnesses. If the referee's findings are supported by the evidence, they will not be disturbed by the Supreme Court. *In Re Theodosen,* 303 N.W.2d 104 (S.D.1981); *In Re Goodrich,* 78 S.D. 8, 98 N.W.2d 125 (1959); *In Re Schmidt,* 70 S.D. 161, 16 N.W.2d 41 (1944). Since they are supported by evidence, the referee's findings are adopted. However, in our view, those findings, when considered with subsequent statements of respondent, do not support the referee's recommendation.

At the hearing before this court respondent appeared in his own behalf. The following colloquy was had between members of the court and respondent.

Q. Well, Mr. Rensch, this was said by the Judge [Grosshans], from the transcript apparently. "Now if Mr. Rensch has not received a penny's consideration so far and his involvement in this matter for the next three weeks is with the understanding that any consideration here, he receives, comes after the satisfaction of lien, or then Mr. Rensch is going to be entitled to sit at the table." ... With that understanding ... you continued to sit at the table and now you say that you didn't, that you were entitled to keep this property?

A. Well, Your Honor, you know if there is a lien on the property, I wasn't all that positive there wasn't any lien.

That statement says that there is a lien on the property, you are going to come after the lien. And there can't be any argument about that. If there is a lien on the property, anybody's going to come after it....

....

... The final point I want to make on the whole situation, aside from the technical points, is that I believe Judge Heege's decision should be upheld from an equitable standpoint in so far as I am concerned. Your Honors, the matter of the fee that was taken up at that time, the only question that seemed to be important was "What did you receive so far?" The matter of what are you going to receive in the future was never gone into, and I think—

Q. I just read you where it said that. It's your understanding that any consideration you receive comes after the satisfaction of the lien. In other words, after the satisfaction of the county's claims, or attorney's fees—

A. Aside from... Yes, but if there was a lien on it, like I just answered...

Q. You are getting very technical there and perhaps you are clearly right. But, it seems to me that ... what the judges have to look at is that when counsel are appointed for indigents the county is entitled to recover their money. If they've got any assets that should be a priority claim against those assets. How true that the lien does not attach. But you are an officer of the court, you're not ... somebody down the street that wants to get his bill paid. You're going in there as an officer of the court.

A. That's true Your Honor.

Q. And you've got to play open with the Court. And if the Court says that "You are going to sit at that table," and that is what he says, "You can sit at that table if you understand that anything you get comes after the county."

A. Well, of course, he didn't say that.... He said after the satisfaction of the lien...

Q. Well, all right. On this page 7 here of this transcript, the Judge [Grosshans] is talking. And he says, "Now, Mr. Rensch is in here and it sounds to me like almost on a pro-bono basis or until he finds out if there is anything from which the defendant can later pay his fees—that's the way I understand it. If I am wrong, someone maybe better correct me." And then apparently you spoke up and you said, "I can just simply say that Mr. Huth does not have the wherewithal anyway in the world to hire me to do this case. As you can see, my job doesn't amount to much, so rest assured that that's a true statement." Now, any wherewithal any way in the world. But when you said that to Judge Grosshans, had you at that time received either a deed, or a lien, or anything from him?

A. I hadn't received one single penny.

Q. Nor any...

A. No property.

Q. Property, any deed, any mortgage, anything at that time?

A. That's absolutely the truth.

....

Q. Well, when did you get this deed to the property?

A. Your Honor, I got it probably two days later, about two days later.

Q. But at the time you were before the court did you have an agreement that that's what you were going to get?

A. Yes, I did.

Q. So that you knew at that time that he had a piece of property and it was worth four to five thousand dollars?

A. I told him that he had ... that the property did not have a lien on it, that he could give it to me.

█ These statements of respondent reveal he was less than candid with Judge Grosshans and thereby frustrated the court's efforts to determine if Mr. Huth

was still indigent, pursuant to SDCL 23A–40–6, –10.[2] Respondent's conduct evinces an intent to thwart the statutes designed to insure that assets of defendants represented by court-appointed counsel are available to reimburse the counties for the expense of such representation. Under the circumstances of this case, the fee arrangement was not privileged. *Baskerville v. Baskerville,* 246 Minn. 496, 75 N.W.2d 762 (1956); *People v. Cook,* 82 Misc.2d 875, 372 N.Y.S.2d 10 (1975); 81 Am.Jur.2d, *Witnesses,* § 215; *Accord, Hedges v. Hedges,* 87 S.D. 425, 209 N.W.2d 660 (1973); *Higgs v. Bigelow,* 39 S.D. 359, 164 N.W. 89 (1917).

Respondent is guilty of a serious breach of professional ethics, in violation of SDCL 16–19–33(5).[3] He willfully violated Canon 1 and Disciplinary Rule 1–102(A)(4) and (5) of the Code of Professional Responsibility in that on January 5, 1981, during the trial of *State v. Huth,* he misrepresented his fee arrangement to Judge Grosshans, which conduct was prejudicial to the administration of justice.

Canon 1: A lawyer should assist in maintaining the integrity and competence of the legal profession.

DR 1–102(A)(4) & (5): A lawyer shall not: engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; engage in conduct that is prejudicial to the administration of justice.

While it is necessary and proper for this court to bear in mind the effect of the disciplinary proceeding on an accused, our ultimate concern must be the protection of the public from further wrongdoing by the lawyer. *In Re Goodrich, supra.* We accordingly agree with the Disciplinary Board's prayed for disposition and declare that by the publication of this decision the respondent is thereby publicly censured. SDCL 16–19–35(4).[4]

All the Justices concur.

2. SDCL 23A–40–6 reads: In any criminal investigation or in any criminal action or action for revocation of suspended sentence or probation in the circuit or magistrate court or in a final proceeding to revoke a parole, where it is satisfactorily shown that the defendant or detained person is without means and unable to employ counsel and pay for the necessary expenses of his representation without undue hardship, the judge of the circuit court or the magistrate shall, upon the request of the defendant, assign, at any time following arrest or commencement of detention without formal charges, counsel for his representation, who shall appear for and defend the accused upon the charge against him, or take other proper legal action to protect the rights of the person detained without formal charge.

In each case, the indigent person, subject to the penalties for perjury, shall certify in writing or by other record such material factors relating to his ability to pay as the court prescribes. SDCL 23A–40–10 reads: Whenever the court finds that funds are available for payment from or on behalf of a defendant to carry out, in whole or in part, the provisions of this chapter, the court may order that the funds be paid, as court costs or as a condition of probation, to the court for deposit with the county treasurer, to be placed in the county general fund or in the public defender fund in those counties establishing such an office pursuant to subdivi-

sion (1) of § 23A–40–7 as a reimbursement to the county to carry out the provisions of this section. Such reimbursement shall be a credit against any lien created by the provisions of this chapter against the property of the defendant.

3. SDCL 16–19–33(5) reads: The following shall similarly constitute misconduct and shall be grounds for discipline:

(5) Willful violation of any bylaw, rule, or regulation duly adopted by the state bar and approved by the Supreme Court[.]

4. SDCL 16–19–35 reads: Misconduct shall be grounds for:

(1) Disbarment by the Supreme Court;
(2) Suspension by the Supreme Court for an appropriate fixed period of time, or for an appropriate fixed period of time and an indefinite period concurrently or thereafter to be determined by the condition imposed by the judgment. No suspension shall be ordered for a specific period in excess of three years;
(3) Placement on a probationary status by the Supreme Court for a stated period, or until further order of the Court, with such conditions as the Court may specify;
(4) Public censure by the Supreme Court; or
(5) Private reprimand by the disciplinary board.