## *In re* ELLIOTT.

1. In proceedings for the disbarment of an attorney admitted to practice on a certificate of admission from another state, he was estopped to object that the fraud alleged to have been practiced on his client was committed three days before his admission, since, if such was the fact, he was guilty of a misdemeanor, as provided by Rev. Pol. Code, § 696, in falsely representing himself to his client to be a licensed attorney.

2. Defendant, an attorney 59 years of age, who was first admitted to practice in 1874, was employed to defend a divorce proceeding, and contracted in writing to save his client harmless from the payment of alimony, and to defeat the action for divorce, in consideration of one-half of the money to be recovered in an action for damages for the alienation of the affections of his client's wife. He falsely represented to his client that the sum of $12.50 was required either to pay costs in the divorce proceedings or to obtain copies of the papers, etc., and obtained and cashed a draft for him, from which he retained $75, in order to assist his client in violating an injunction restraining the latter from transferring any of his property; and, notwithstanding he had knowledge that judgment had been recovered against his client in the divorce proceeding by default, he represented to him that the case was being continued from time to time. The client, after learning the truth, filed an affidavit for disbarment, whereupon defendant committed an aggravated assault upon him, for which he pleaded guilty, and paid a fine; and there was other evidence that he had received considerable sums of money from various clients, for none of whom had he rendered services of any value. Held, that such facts required a judgment of disbarment.

(Opinion filed July 13, 1904.)

Proceedings for the disbarment of T. F. Elliott. Disbarred.

*H. R. Horner* and *I. W. Goodner*, for accusers.

*Burdette C. Thayer*, for accused.

HANEY, J. This is an original special proceeding instituted by direction of this court for the purpose of determining

whether the license of T. F. Elliott as an attorney and counselor at law of this state shall be revoked.    To such specifications of the accusation as were not stricken out on demurrer the accused filed an answer, which, in effect, denies all the remaining allegations of misconduct.    Upon the issues so joined the cause was tried in open court, the accused being present in person and represented by counsel.

In view of the nature and consequences of an accusation which justifies the removal or suspension of an attorney, the uniform current of authority requires the charges in such cases to be established by a clear and undoubted preponderance of the testimony.    In re Eaton, 4 N. D. 514, 62 N. W. 597.    Having this manifestly reasonable and just rule in mind, we will proceed to consider the testimony touching such of the charges in this case as demand attention.    The first specification is, in substance, as follows:    That on August 3, 1903, the accused, having been employed by one C. H. Twigg to conduct the defense of an action then pending in Pennington county, wherein Twigg's wife was seeking to secure a divorce, falsely represented to Twigg that it would be necessary for him to pay $12.50 as costs required by the court to be paid in advance, and before the defense of such action could be begun; that thereupon, believing such representation to be true, and relying on the accused being an attorney at law licensed to practice in all the courts of this state, Twigg paid the accused said sum as and for advance costs on behalf of the defendant, whereas in truth and in fact no costs were required to be advanced before a defense could be interposed, as the accused well knew.    It is undisputed that Twigg on or about August 3, 1903, called at the office of the accused in the city of Pierre, where the latter

was holding himself out to the public as an attorney at law entitled to practice in all the courts of this state, and consulted with him regarding the defense of an action then pending in Pennington county, wherein Twigg's wife was seeking to secure a divorce, and regarding the instituting of an action for damages caused by the alienation of his wife's affections; that such consultation resulted in the employment of the accused as an attorney; and that Twigg paid to the accused $12.50. Twigg testified that this sum was paid as advance costs which the accused represented would have to be paid into court before the defense could be interposed; that the accused agreed to defeat the divorce case, defeat alimony, secure him the custody of his children, and prosecute the proposed damage suit for one-half of the amount recovered in the latter. The accused admitted receiving the money, but claimed $10 of it was received as a retainer fee and $2.50 to be used in obtaining a certified copy of the complaint in the divorce action; that amount being usually required for that purpose in Nebraska, where he formerly practiced law. Were this the only testimony relating to this specification, we might readily infer that Twigg was mistaken as to the purpose of the payment; but his version of the transaction is corroborated by other established facts and circumstances which cannot be ignored. The following writing, prepared and signed by the accused, was delivered by him to Twigg at or near the time when he received the money: "State of South Dakota, Co. Hughes—ss. Received of C. H. Twigg the sum of $12.50 on the account of costs in full in action of divorce pending in Rapid City court. It is understood that the said T. F. Elliott is to save the said C. H. Twigg from alimony and costs from said case and defeat said action.

It is further agreed by and between such parties that the said T. Elliott is to have one half of all sums received in an action to be brought against * * * Dated this 3rd day of August, 1903. [Signed] T. F. Elliott, Attorney." Since some time previously copies of the summons and complaint in the divorce action had been deposited in the postoffice directed to Twigg at his last known place of residence, it is fair to infer that he had received such copies before calling on the accused; that the accused would, as soon as such action was mentioned, have inquired concerning what papers, if any, had been served therein; and that Twigg would have produced the copies in his possession, as he claims he did. If this be so, no pretext whatever existed for representing that $2.50, or any other sum, was needed in procuring a certified copy of the complaint. Moreover, if the accused was not furnished with a copy by his client, he must be presumed to have known how to procure one from plaintiff's attorney. Rev. Code Civ. Proc. § 106. A careful consideration of all the evidence compels the conviction that the allegations in this first specification are sustained. "An attorney and counselor who is guilty of deceit, with intent to deceive a court or judge, or party to an action or proceeding, is liable to be disbarred." Rev. Pol. Code, § 698. The written receipt or contract delivered to Twigg was, by its terms, calculated to deceive. It was a fraud on its face. No lawyer of ordinary intelligence, acting in good faith, would have agreed with any client to save him from alimony, or to defeat any action.

It appears the accused was admitted to practice by this court on a certificate from the Supreme Court of Nebraska, August 6, 1903, three days after this transaction is alleged to

have taken place, and it was suggested in argument that he could not be disbarred for acts done prior to his becoming a licensed attorney in this state. The precise time alleged is not material, and it is not certain from the evidence just when the money was paid. If it was paid prior to August 6th, the accused practiced a gross fraud upon Twigg and the general public by falsely representing himself to be a licensed attorney. He was guilty of a misdemeanor (Rev. Pol. Code, § 696); and it comes with poor grace from him to say that he was not then admitted to our bar. Were this the only charge we might hesitate to hold it sufficient cause for disbarment. However this may be, it certainly should be considered in connection with other transactions in determining whether the accused is a fit person to practice law in this state.

It is alleged in the third specification, in substance, that on or about August 24, 1903, the accused, having learned that Twigg had a bank draft for $305, falsely represented to him that his exemptions were only $250, and that in the divorce proceeding his wife could take from him all moneys in excess of that sum; that he advised Twigg to have the draft cashed, and allow him to keep all in excess of $250; that thereupon Twigg delivered the draft to the accused, who cashed the same at one of the Pierre banks; that he delivered $235 to Twigg and retained the balance, and that he still retains such balance, though often requested to return the same. To this charge the accused answered, in effect, that Twigg requested him to have the draft cashed; that he complied with such request; that he delivered all the money received to Twigg; that subsequently Twigg loaned him $70, for which he gave his promissory note, due in 90 days from date. Twigg testified to sub-

stantially the same state of facts as are alleged in the accusation. The accused stated on the witness stand that he advised Twigg to have the draft cashed because an injunction had been issued in the divorce action, and, if the banks should receive notice, the money could not be collected. He denied having made any statement concerning his client's exemptions. A promissory note for $70, dated August 24, 1903, due 90 days after date, payable to Twigg, and signed by the accused, in the possession of the former, was received in evidence. A letter written by Twigg to the accused, asking for money, wherein he refers to the transaction as a "loan," was also received in evidence. While the conduct of the accused, if his testimony be true, in advising and participating in the violation of an injunction of which he had notice, was a willful disregard of his duty as an attorney, and ground for disbarment or suspension, we are not satisfied that this specification has been established.

The fifth specification is to the effect that the accused was employed to defend in the divorce action because Twigg, having a good and meritorious defense, desired such action to be properly defended; that he wholly neglected and failed to make any defense therein, but permitted a decree to be taken in favor of the plaintiff as by default, by the terms of which she was awarded the custody of the minor children; and that, though such decree was granted at the January, 1904, term of the circuit court in Pennington county, the accused has at all times since represented that the case was not ready for trial, but was being continued from time to time. Concerning the defense of the divorce action, the following facts are clearly established by the evidence: An answer, prepared by the accused was sent to Mr. Charles W. Brown, an attorney at Rapid

City, who very properly substituted one drawn by himself, which he caused to be served in due time. On October 19, 1903, Mr. Brown informed the accused by letter that he had been served by plaintiff's attorney with a notice to take depositions on the 22d. On November 15th he informed him that the next term of court would convene December 8th, and that the case would be called in ten days or two weeks thereafter. On November 30th the accused replied as follows: "Dear Sir Yours at hand in reply will say that Twigg is not here at present, as I told him that the Circuit Court would not be in session until the 8th day of Jan, how I got that idea I don't know but I think it was from an Atty. from your place who was here some weeks ago, he said that the court had gone to the Hills for some reason, cant you get it put off until I can get word to Twigg, I will write to him at the place he last was, and see if I can get him he said he thought of going to Mass, for a short time and would be back in time for the trial though I am afraid not, I will do the best I can, my idea was he intended to come directe to the city, in time for the trial in Jan, I am ceartain that I was told by an atty from your city that the court would not convene untill the time herein stated, as I could just as well been ready then as any time, if it is possible cant you have it put off, let me hear from you in regard to it." On February 24, 1904, Brown, replying to a letter of inquiry from Twigg, informed the latter that a decree had been granted. On April 13th, after having been told by Twigg what he had learned, the accused wrote Brown as follows: "Dear Sir In—regard to the Twigg suit what was done in the matter Mr. Twigg says that she got her Divorce Now I did not want Mr. Twigg to make any appearance in the action further as I entertain the

opinion that where she had left the state that the case would fall, then again the petition and injunction injoining him from getting any money why I told him to keepe shady as they would have him up for contempte of court, as he got the money after he was injoined from takeing it let me hear from you as I want bring suit against that fellow that alinated her a way from Twigg what is your fees make them as light as you can and let me hear from you on receipte." Being satisfied that the accused could have communicated with Twigg at any time he desired to, we cannot escape the conclusion that he intentionally deceived his client with respect to the condition of his case.

It is alleged in the sixth specification that "on the 9th day of June, 1904, at the city of Pierre, in said Hughes county, the said defendant, by reason and on account of the said Twigg having made and filed in the Supreme Court the affidavit upon which these proceedings are founded, deliberately and with premeditation committed an aggravated assault and battery upon the person of the said C. H. Twigg, and thereupon was arrested upon a complaint duly sworn to by said Twigg, and upon a plea of guilty entered was fined in the sum of $25 in the justice court of one S. C. Yarnell, a justice of the peace in and for the county of Hughes aforesaid." This charge is clearly sustained by the evidence.

There are other serious charges of misconduct contained in the accusation, the details of which need not be discussed. The above mentioned damage suit has not been begun, and no costs were ever paid by the accused in the divorce action. It appears that during the time he has resided in Pierre he has received considerable sums of money from various clients, for

none of whom has he rendered services of any value whatever; that in disregard of his duty as an attorney "to maintain the respect due to the courts of justice and judicial officers" he, according to his own testimony, advised and participated in the violation of an injunctional order of which he had notice; that in disregard of such duty he made an assault upon one who, in the exercise of an undoubted right, had properly applied to this court for an investigation of his professional conduct; that in disregard of his duty as an attorney "to abstain from all offensive personalities" he unjustifiably accused an attorney, required by this court to conduct the prosecution of this proceeding, who was cross examining him in a gentlemanly and proper manner, with having told a witness how to testify; and that he has been guilty of deceit. Our statutes declare that a willful violation of any of the duties of an attorney or counselor as prescribed therein is sufficient cause for revocation or suspension. Rev. Pol. Code, § 704. While the statutes of many of the states authorize the suspension or removal of attorneys upon specified grounds, it has generally been held that such statutes do not restrict the general powers of the court over attorneys, who are its officers, and that they may be removed for other than statutory grounds. 4th Cyc. 905. However, as statutory grounds for disbarment have been shown to exist, we refrain, in this proceeding, from expressly deciding whether or not such grounds should be regarded as exclusive in this jurisdiction. This court is now clothed with the sole power of admitting, suspending, and disbarring attorneys. No person can lawfully practice as such in any state court of record without its sanction. Rev. Pol. Code, §§ 685, 693. The importance of this power can be scarcely overesti-

mated. Most serious consequences to the legal profession and general public must constantly flow from its exercise. Regarding the court's duty with respect to persons whom it has licensed to act as attorneys and counselors at law, the Supreme Court of Pennsylvania employs the following clear and comprehensive language: "By admitting an attorney to its bar, the court presents him to the public as worthy of its confidence in all of his professional duties and relations. If afterwards it come to the knoweldge of the court that he has become unworthy, it is its duty to withdraw that indorsement, and thereby cease to hold him out to the public as worthy of professional employment." Serfass' Case, 116 Pa. 455, 9 Atl. 674. The duty of the court in this proceeding is plain. Its confidence having been abused, its indorsement should be withdrawn. In arriving at this conclusion we have not been unmindful of what disbarment involves, especially to one who is nearing life's close. But, notwithstanding it appears that the accused is 59 years of age, and was first admitted to practice in 1874, we owe a duty to the public which cannot be disregarded, however painful may be its performance. Moreover, neither age nor long experience at the bar can excuse or palliate such conduct as we have been called upon to consider in this case. The name of the accused must be stricken from the roll, and his license revoked.

Judgment will be entered accordingly.

FULLER, J., being ill, was not present during the trial, and has taken no part in this decision.