### In Re SCHMIDT

(16 N. W.2d 41)

(File No. 8469. Opinion filed October 16, 1944.)

**George T. Mickelson,** Atty. Gen., and **Irwin R. Erickson,** Asst. Atty. Gen., for the State.

**Frank S. Tait, Jr.,** of Milbank, for Defendant.

A. O. Schmidt, of Milbank, pro se.

PER CURIAM. The accused, A. O. Schmidt, was charged in a formal complaint with unprofessional conduct. Issue was joined, and this court thereupon appointed Hon. R. C. Bakewell, one of the judges of the Fourth Judicial Circuit, as referee to try the issues, make findings of fact and recommendations thereon and report the evidence taken and the proceedings had to this court. Thereafter the referee returned his report together with his findings of fact and recommendations. The referee recommended that judgment be entered by this court revoking and cancelling the license of the said A. O. Schmidt to practice as an attorney and counselor at law in this state.

The facts as disclosed by the record and the findings of the referee are substantially as follows:

The accused was the attorney for the Adler Estate which was in the process of probate in Grant County, South Dakota. The heirs of this estate consisted of the widow, Helena Adler, and several children, among whom was one Amelia Schmidt. Amelia Schmidt was very ill in the spring of 1940 and confined in a hospital in Appleton, Minnesota. Helena Adler consulted the accused in his office at Milbank in the month of March, 1940, and advised him that Amelia Schmilt desired to make a will and further advised him as to the content of

such will. Thereafter, accused drew a will purportedly for Amelia Schmidt, wherein it was provided that Amelia's husband should receive upon her death the sum of $25 only. On either the 21st or 22d of March, the accused and Mrs. Adler drove to Appleton, Minnesota, and after spending some time with Amelia Schmidt, who was then seriously ill, the will which the accused had prepared was executed. Accused testified that the will was then placed in a dresser drawer in a room occupied by Amelia Schmidt and he returned the following Sunday, obtained the will, placed it in a steel safe in his office and that it there remained until removed by him and taken to the Clerk of Courts office in Grant County and opened. It clearly appears from the evidence and in such a manner that it is not subject to dispute that someone had changed the date of this will after its execution and prior to its production at the office of the Clerk of Courts. The figures 22 had been carefully erased and the figures 28 inserted in their place, that is, the date had been changed from the 22d of March, 1940, to the 28th of March, 1940. The will had also been changed so as to make it appear that by this will any prior will made by the testatrix was revoked and cancelled. The will as originally drawn recited that no prior wills had been made. It further appears from the evidence that on March 25, 1940, Amelia Schmidt executed a will, the terms of which are substantially different from those of the will prepared by accused, especially so far as related to the provision made for the husband.

The trial court found that the accused with the intent, purpose and design of injuring and defrauding the husband of Amelia Schmidt and with the premeditated intent and design of deceiving the courts of Minnesota and South Dakota made the changes in the will to which reference has been made. The court further found that the will was filed by the accused in the Clerk of Courts office in Grant County with the intent on the part of the accused to obtain its probate as a valid will of later date than the will of March 25, 1940 and that this intention was abandoned only when the beneficiaries under the will filed by accused, refused to recognize it or take under it.

While it might be that under the provisions of SDC 33.1513 the findings of fact of the referee are not conclusive when presented to the court, nevertheless, these findings and the report are entitled to the careful consideration of this court which is mindful of the fact that the referee saw and heard the witnesses with all the advantage that is gained from such personal contact. This court has consistently refused to disturb the findings of the referee in disbarment proceedings where the findings are supported by the evidence. In re Aaberg, 66 S. D. 613, 287 N. W. 506; In re Nequette, 66 S. D. 363, 283 N. W. 168; In re Brown, 64 S. D. 87, 264 N. W. 521; In re Foy, 62 S. D. 23, 250 N. W. 671. We have carefully reviewed the entire transcript of the testimony and have concluded that the evidence amply supports the findings made by the referee. No useful purpose would be gained in attempting to set forth the evidence in detail. We do mention the fact, however, that accused had sole access to the will from the time it came into his possession until it was presented to the Clerk of Courts. The trial court found that the accused took the will with him immediately after its execution. As stated above, the accused testified that the will was placed in the dresser drawer in the hospital room and was not taken by him until the Sunday following its execution. The testimony of accused in this regard presents what appears to be a very improbable story and in our judgment falls within that part of the referee's report wherein it is stated that testimony of the accused "fails to carry conviction and I find it to be false and perjured as to matters material to the issues involved in this proceeding." The finding of the trial court that accused took possession of the will immediately after its execution and that it was constantly thereafter in his possession until it was presented to the Clerk of Courts is amply supported by the evidence and directly points to the accused as changing the will as charged.

In the light of the entire record and the facts as found by the referee, we are of the opinion that this court can do no less than follow the conclusions and recommendations of the referee and direct an entry of disbarment against the accused. It is so ordered and adjudged.