IN RE JOHN E. GOODRICH

(98 N.W.2d 125)

(File No. 9714. Opinion filed September 2, 1959)

Parnell J. Donohue, Atty. Gen., Wallace G. Dunker, Asst. Atty. Gen., for the State.

Gale B. Braithwaite, Cherry, Braithwaite & Cadwell, Sioux Falls, for Defendant.

RENTTO, J. On August 29, 1946, John E. Goodrich was licensed to practice in this state as an attorney and counselor at law. This proceeding seeks his disbarment. It is based on a formal complaint containing nine separate charges of unprofessional conduct. His answer admits the incidents on which the charges are based but denies any conduct on his part in connection therewith constituting grounds for revocation or suspension of his license.

Hon. James R. Bandy, one of the judges of our first judicial circuit, was appointed referee to try the issues raised

by the pleadings. Upon the conclusion of such hearing he filed with this court his findings of fact. Where more than one charge was based on a single incident the referee consolidated them for the purpose of his report. He recommended that the accused be disbarred. The accused filed exceptions which were argued orally by his counsel and the Attorney General's office. After that we were furnished typewritten briefs.

One of the incidents involved an appeal to this court which the accused agreed to prosecute for one Alfred Riggs and for which he was paid $600. This court dismissed the appeal because of failure to prosecute. It is charged that in this he was negligent and the referee's report indicates that his counsel conceded negligence on his part. The more serious element of this charge is that when his client over a year later asked him about the status of this matter he sought to deceive the client. The referee found that he did this by partial, incomplete and misleading statements.

An appeal which accused was handling for one Gordon was also dismissed because of lack of prosecution. As to this the referee found that he lacked diligence and was inattentive. He also found that the appeal was taken primarily for the purpose of delay and that after its termination the accused wilfully deceived his client as to the reason for its dismissal.

This Gordon litigation involved the foreclosure of a contract for the sale of real estate. The judgment filed on March 3, 1956, determined the amount that Gordon had to pay to comply with the contract and the time in which he was to do so. When this was entered Gordon was the owner of some other real estate which he was endeavoring to sell to one Ella Mae Shields. Accused had knowledge of this ownership and of Gordon's endeavor. In fact he was assisting in the sale. There was a difference of opinion as to whether the judgment referred to was a lien on the property which Gordon was trying to sell.

Accused sought to have the abstractor, who was also an attorney at law, continue the abstract without showing

the judgment. This he refused to do and he also declined to issue title insurance without showing the judgment as a lien on the abstract. Thereafter accused obtained such title insurance directly from the company, for which he was an approved title examiner, by giving it an opinion based on the abstract to the property certified to December 7, 1954. He stated that the title to the property was vested in Ella Mae Shields when in fact the abstract showed title in the parties from whom Gordon had purchased it. The referee found this title opinion to be false to the knowledge of the accused.

Vernon Murray, a client of the accused, owned an automobile which was subject to a lien. It had suffered damage which the insurance carrier agreed to pay for. The carrier's attorney delivered to the accused, as Murray's attorney, a draft in payment of the loss. By inadvertence it failed to show the lien holder as a copayee. Accused used the proceeds of the draft in payment of a personal obligation. Thereafter he repeatedly promised to pay for the repairs but did not do so. The repairs were later paid for by the attorneys for the insurance carrier who subsequently recovered their payment from Murray.

The referee found that when accused received this draft he knew of the lien and that it was to be used to pay for the repairs made on the car. This was the understanding counsel reached in their negotiations. In his answer accused sought to give the impression that these proceeds were still held by him in trust. The referee found this to be incorrect and further found that in his testimony accused untruthfully claimed that Murray had given him prior authority to take and use such proceeds as he did.

Accused had clients who were interested in buying some real estate and quieting the title thereto but they did not want to appear as the purchasers. Accordingly accused took title to the property in the name of his wife even though she had no beneficial interest in it. This the referee found was without her knowledge, consent or participation. Subsequently accused and his wife had marital difficulties which

caused her to leave him. After this occurred, but before their divorce, accused prepared a quitclaim deed, by which the title was to be conveyed from his wife to his clients.

Such deed appearing to be executed by his wife was thereafter recorded. She denied having signed it. Concerning this the referee found that the accused without her knowledge, consent or authorization signed her name to the deed and as a notary public executed the certificate of acknowledgement appearing thereon. The accused consistently throughout these proceedings denied that he placed the purported signature of his wife on such deed. The referee reported that he was satisfied that this denial by the accused was an attempt to deceive him and this court.

These findings dispose of the principal complaints made against the accused. Three other incidents of charged misconduct are referred to in the referee's report. However, because of the nature of two of them and a lack of evidence concerning the third he does not attach significance thereto. His report contains this further finding: "* * * it is the considered opinion of the Referee and he finds that both as to the offenses upon which affirmative findings have been made and throughout this proceeding the Accused has demonstrated a willingness to evade, avoid and deceive whenever it seemed to suit his interests and purposes. The Referee feels that this conduct on the part of John E. Goodrich, at a time when he should have known and realized that, insofar as this proceeding is concerned, the truth or falsity of the charges made against him was only of importance insofar as it tended to establish his moral fitness to continue to engage in the practice of law, is even more illuminating than the transactions charges themselves."

Detailed exceptions to the report of the referee were filed on behalf of the accused. To discuss each of these individually would unduly extend this opinion without serving any worthwhile purpose. In general he urges that the adverse findings are not sustained by the evidence. In this connection he argues, first, that more than a mere preponderance of the evidence is necessary before it can be said that

a finding in a proceeding of this kind is sustained, and second, that in determining whether the findings are supported, this court itself is the judge of the facts. His first argument has been answered by this court. Our rule is that the charges in disbarment cases "must be established by a clear, undoubted preponderance of the testimony." In re Sherin, 27 S.D. 232, 130 N.W. 761, 762, 40 L.R.A.,N.S., 801. With his second contention we are not in accord.

We share his view that such findings are not conclusive when presented to this court. However, they "are entitled to the careful consideration of this court which is mindful of the fact that the referee saw and heard the witnesses with all the advantage that is gained from such personal contact." In re Schmidt, 70 S.D. 161, 16 N.W.2d 41, 42. It is true as pointed out by the accused that the referee did not have such contact with two of the witnesses since they testified by deposition. We have reviewd these as if presented orginally to us and find nothing in either of them that detracts substantially from the referee's finding on matters with which they are concerned.

In determining whether a fact issue is established to the required degree of persuasion it is necessary to weigh the evidence. We are in no position to do that on a written record. Generally the determination of facts is the province of the trier because of his superior opportunity to evaluate the believability of the witnesses. We are not aware of any reason why a different rule should apply to a disbarment matter being heard by a referee. Nor do we feel that this is contrary to the provisions of SDC 33.1513. It is for the referee in the first instance to determine whether the charges are established by a clear, undoubted preponderance of the evidence.

A long standing rule of this court in proceedings of this type is that if the findings are supported by the evidence this court will not disturb them. In re Schmidt, supra. Our review of this voluminous and detailed record compels the conclusion that the evidence more than adequately supports the findings of the referee. Its impact on him is

summarized thus in his report. "The Referee, with full realization of the serious consequences involved, is convinced that the Accused has demonstrated a lack of appreciation of the responsibility, honesty and candor which should characterize one engaged in the practice of law, or has exhibited a willingness to utilize whatever means might serve to attain an end he seeks."

The exceptions also present the question of an attorney's negligence as grounds for disbarment. It is obvious from the report that the recommendation of the referee was not influenced by or based on any consideration of negligence. Consequently we do not reach this matter. The referee's observation that throughout the proceeding the accused was willing to evade, avoid and deceive whenever it seems to suit his interests or purposes, seems to us warranted and pertinent to the issue under consideration.

Our rules set out in SDC 32.11, as amended, governing the admission of lawyers to practice were adopted to protect the public from the unfit. The right to practice is but a privilege granted upon demonstration of satisfactory moral fitness and adequate legal and general learning. "To continue in the enjoyment of this privilege one must maintain his fitness and qualifications." State ex rel. Rice v. Cozad, 70 S.D. 193, 16 N.W.2d 484, 485. We think it follows that the purpose of disbarment should be to protect the public from those practitioners who have failed to maintain the required fitness. If that protection requires that a lawyer be disbarred or suspended, it almost always results in hardship to him and his family, which naturally makes these cases unpleasant. It seems that because of this feature courts on occasions have been more concerned about the effect of disbarment on the lawyer than with the purpose of disbarment.

Obviously it was that human and very natural feeling which prompted this court in Re Bartlett, 47 S.D. 208, 197 N.W. 285, 288, to say this concerning disbarment, "Indeed, we might say that it should be resorted to only where the evidence and circumstances are such as to show that the

respondent is so lacking in ability or character as to be wholly unfit to be intrusted with the interest of others." In commenting on this statement about four months later this court speaking through the same judge who wrote its opinion in the Bartlett case said: "Upon reflection, we are of the opinion that we inadvertently set too low a standard of professional conduct. That sentence should be stricken from the opinion." In re Waggoner, 47 S.D. 401, 199 N.W. 244, 246. This retraction expanded the meaning and broadened the scope of the unfitness warranting disbarment.

█ █ In deciding these cases it is necessary and proper to bear in mind the effect that the proceeding may have on the accused. However, our ultimate concern must be the protection of the public from the unfit, which, after all, is the reason why such proceedings are authorized. When the unfitness of a lawyer to continue in the practice is established by a clear, undoubted preponderance of the evidence, as it is in this case, our duty, though unpleasant, is clear. We think it requires the entry of a judgment of disbarment against the accused as recommended by the referee.

It is so ordered and adjudged.

All the Judges concur.