In the Matter of the DISCIPLINE OF
David J. STANTON, as an
Attorney at Law.

No. 15822.

Supreme Court of South Dakota.

Argued Feb. 15, 1989.

Decided Aug. 16, 1989.

R. James Zieser, Tyndall, for Disciplinary Bd.

David J. Stanton, Rapid City, pro se.

MORGAN, Justice.

This is a disciplinary proceeding under the provisions of SDCL ch. 16–19 against David J. Stanton (Respondent), a member of The State Bar of South Dakota (State Bar). Respondent was admitted to practice as an attorney and counselor-at-law before the courts of the State of South Dakota in 1971. After admission, Respondent practiced briefly with the State Attorney General, worked for the State Supreme Court and, since 1973, engaged in private practice in Rapid City, South Dakota.

Numerous complaints regarding Respondent's representation of clients in the practice of law had been reported to the Disciplinary Board (Board) of the State Bar, which undertook to investigate the complaints. A report from that Board [1] to this court resulted in an order on June 11, 1987, authorizing the filing of the formal accusation. By formal accusation filed on June 30, 1987, Respondent was accused of numerous acts which were violations of the Code of Professional Responsibility; in particular, the Disciplinary Rules within the purview of Canon 1: maintenance of the integrity and competence of the legal profession; Canon 4: preservation of the confidences of a client; Canon 6: competent representation of a client; and Canon 9: avoidance of even the appearance of professional impropriety.[2]

The formal accusations were served by mail on June 29, 1987. A thirty-day extension was granted Respondent in which to answer the formal accusations. Respondent's answer was filed on September 2,

1. In response to Board's report, Respondent simply filed an objection to the "Findings and Proposed Action of the Disciplinary Board."

2. We note that this proceeding is brought under the Code of Professional Responsibility and not South Dakota Rules of Professional Conduct, which became effective July 1, 1988.

1987. The answer generally denied any wrong doing or fault. This court, having reviewed the accusation and answer, determined that it was necessary to appoint a referee and, by order dated September 11, 1987, did appoint the Honorable Richard D. Hurd (Referee), a Circuit Judge of the State of South Dakota, to take and hear testimony and submit findings and a recommendation to this court.

Pursuant to his authority, Referee, after a telephonic conference, set the evidentiary hearing in Rapid City, to commence on January 5, 1988. Thereafter, Respondent made or caused to be made three requests for continuance of the hearing on the grounds that he had not obtained counsel. All requests were denied. An evidentiary hearing was held on January 5 and 6, 1988, at the close of which Respondent was advised that he had forty-five days to obtain an attorney or evidence would be closed. When Respondent failed to meet the forty-five-day deadline, Referee advised him that his proposed findings, conclusions and recommendations should be submitted by March 10, 1988. Thereafter, another flurry of requests for continuances to obtain counsel ensued. Finally, by letter dated May 9, 1988, attorney Rick Johnson advised Referee that he was representing Respondent[3]. On August 15 and 16, 1988, an additional evidentiary hearing was held in Rapid City, at the close of which Referee announced that he might be forced to recommend disbarment in his report to the Supreme Court, if there was no other way to protect the public. Each party was given ten days to submit proposed findings, conclusions or recommendations.

Referee's report, including findings of fact, conclusions of law and recommendations, was dated September 8, 1988, and filed in this court on September 12, 1988. The transcript of Referee's hearings was filed on December 19, 1988, and, by order of this court, the last day for service and filing of objections to the report was Janu-ary 3, 1989. Respondent filed no objections. The matter was then set for hearing before this court on February 15, 1989. This court heard arguments from counsel for Board and from Respondent pro se and gave Respondent twenty days within which to file written objections.

Respondent's objections took several forms. First, he submitted a "Motion to Reject Prosecution by Bar Examiners[4] and for an Order for New Bar Investigation." The motion was based on alleged conflicts of interest of Board's president and Board's investigator, in that they or the law firms in which they were partners had retainer contracts with one of the parties to a quiet title action arising from one of the actions of Respondent under review by Board. He further sought to exclude all testimony of one John Fousek, who had testified before Board regarding the bankruptcy transactions wherein Respondent was charged with various violations. Fousek, himself, had since absconded with a considerable amount of bankruptcy property. Through the motion and continuing through Respondent's proposed findings of fact and conclusions of law, it has been Respondent's position that his problems are related to the activities of Fousek in taking bankruptcy business away from him and hounding him for repayment of fees received without authority of the Bankruptcy Court. Respondent also made mention of being disabled by reason of an adrenaline attack, which he characterizes as a heart attack, that effectively disabled him for a period of nine months. Otherwise, he disputes Referee's findings and conclusions as though they were simply fabrications of others.

■ We deem it expedient to first dispose of Respondent's motions seeking to derail this proceedings. The first is the motion to exclude the testimony of John Fousek and to stay further proceedings.

---

3. Attorney Johnson represented Respondent only to the extent that he appeared as counsel to examine and cross-examine witnesses at the second evidentiary hearing. He did not participate in the hearing on the referee's report.

4. Respondent incorrectly identifies the Disciplinary Board of the State Bar as "bar examiners." We have treated his motion as a challenge to the Disciplinary Board.

The import of the motion is that Fousek, who was a witness in this proceeding regarding Respondent's handling of several bankruptcy cases, has since absconded with a large amount of bankruptcy assets and has been the target of two malpractice suits in Pennington County. Respondent seeks to stay further action in this proceeding until a full investigation of Fousek's affairs can be had. We agree with the response of Board, to the effect that Fousek has now brought discredit on himself and the profession,[5] but that his testimony regarding Respondent's unprofessional handling of bankruptcy cases is fully supported by the testimony of other counsel who appeared and testified, as well as by the testimony of some of the clients. We deny Respondent's motion in that regard.

We next examine the motion to reject the prosecution by the "Bar Examiners" and for an order for a new Board investigation. Respondent first attacks the participation of Terrence Quinn, who is chairman of Board, on the grounds that Quinn's firm was engaged in a lawsuit which was an outgrowth of one of the complaints before the Board. What Respondent neglects to mention is that Mr. Quinn recognized the conflict of interests and did not participate in the discussion or decision of Board, except to sign the various documents as chairman of the Board. Respondent next attacks the participation of Robert Amundson, then employed as an investigator for Board, and whose partner, Pete Fuller, was retained by St. Joseph Mining, a company involved in the litigation arising from one of the cases from which a complaint arose. It appears from Board's response that Fuller's representation was solely in the area of securing mining permits and did not involve the litigation in question, which was handled by a different attorney, who was in fact a member of the Quinn firm. Respondent also urges as grounds for his motion that Amundson "employed a procedurally unfair practice" by soliciting complaints from three of his former clients. Board's response indicates that the meeting was set up by others, the State Bar was notified, and Amundson appeared as requested and merely advised the clients what they must do if they wanted to file complaints. Finally, as Board points out, in this regard, Mr. Amundson was merely an investigator, performing a routine investigation and had no vote as a member of Board. We deny Respondent's motion in this regard. We add that we know that the work of the Board and its investigators is not a happy task. They put in many hours in this very necessary endeavor to police the ranks of the Bar. We deem Respondent's attack on the ethics of the gentlemen named in his motion to be totally uncalled for, even as a desperation move in the face of Referee's report.

Because Respondent contests Referee's decision, we first determine the scope of our review as regards Referee's report. We have held:

> While the findings of the referee are not conclusive, we must consider them carefully because the referee had the advantage of seeing and hearing the witnesses. If the referee's findings are supported by the evidence, they will not be disturbed by the Supreme Court.

*Matter of Discipline of Dana,* 415 N.W.2d 818, 822 (S.D.1987). This court has consistently refused to disturb the findings of the referee where they are supported by the evidence. *Dana, supra; Matter of Discipline of Strange,* 366 N.W.2d 495 (S.D. 1985); *Matter of Discipline of Theodosen,* 303 N.W.2d 104 (S.D.1981); *Matter of Walker,* 254 N.W.2d 452 (S.D.1977); *In re Jaquith,* 79 S.D. 677, 117 N.W.2d 97 (1962); *In re Goodrich,* 78 S.D. 8, 98 N.W.2d 125 (1959); *In re Schmidt,* 70 S.D. 161, 16 N.W.2d 41 (1944).

The standard of our review of the evidence to support a referee's findings was established in the case of *In Re Elliott,* 18 S.D. 264, 100 N.W. 431 (1904), wherein we said:

> In view of the nature and consequences of an accusation which justifies

---

5. Pursuant to SDCL 16–19–65 and 16–19–66, Fousek has voluntarily consented to being disbarred.

the removal or suspension of an attorney, the uniform current of authority requires the charges in such cases to be established by a clear and undoubted preponderance of the testimony.

18 S.D. at 265, 100 N.W. at 432. *Accord: Jaquith, supra; Goodrich, supra; In re Sherin,* 27 S.D. 232, 130 N.W. 761 (1911). We have considered Referee's report in light of the record, using the standard established in *Elliott, supra.*

Respondent is accused of and Referee found him subject to discipline for conduct in violation of several of the Code of Professional Responsibility Canons and their underlying Disciplinary Rules. These include the following:

Canon 1: A lawyer should assist in maintaining the integrity and competence of the legal profession.

DR 1–102 Misconduct.

(A) A lawyer shall not:

. . . .

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

Canon 4: A lawyer should preserve the confidences and secrets of a client.

DR 4–101 Preservation of confidences and secrets of a client.

. . . .

(B) Except when permitted under DR 4–101(C), a lawyer shall not knowingly:

(1) Reveal a confidence or secret of his client.

(2) Use a confidence or secret of his client to the disadvantage of the client.

(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.

Canon 6: A lawyer should represent a client competently.

DR 6–101 Failing to act competently.

(A) A lawyer shall not:

. . . .

(3) Neglect a legal matter entrusted to him.

Canon 7: A lawyer should represent a client zealously within the bounds of the law.

DR 7–101 Representing a client zealously.

(A) A lawyer shall not intentionally:

(1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B).

Canon 9: A lawyer should avoid even the appearance of professional impropriety.

DR 9–102 Preserving identity of funds and property of a client.

. . . .

(B) A lawyer shall:

.     .     .     .     .

(4) Promptly pay or deliver to the client as requested by the client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

There were some eight cases of misconduct alleged against Respondent: ethical violations ranging from ignorance of the law and unconscionable delays in cases to lying to the court and betrayal of client confidences. For clarity's sake, we will organize these violations by client or incident name, provide a brief encapsulation of Referee's findings and conclusions and Respondent's answer, then announce our holdings for each.

## ELLA J. PARKER ESTATE

*Findings*

Respondent opened probate on April 3, 1981. He sold property and dispersed funds without court approval. He failed to timely file a South Dakota Inheritance Tax Report, resulting in a $500 penalty. In addition, he left the case open for five years without filing inventory and appraisal. Finally, he failed to respond to requests to complete the case within a reasonable time. When another attorney was

employed to complete the case, Respondent refused to give up the file until action was commenced to retrieve it.

### Conclusions

The conduct of Respondent violated the following DRs:

   DR 1–102(A)(6)—adversely reflected on fitness to practice law;

   DR 6–101(A)(3)—neglect of matter entrusted to him;

   DR 9–102(B)(4)—failure to deliver client's property.

### Answer

The complaint originated with Judge Young, not with the client. The testimony of the client's daughter [6] was not relevant because she was not informed and was not available for cross-examination by Respondent's counsel. The estate was well handled, bringing a substantial profit due to his management of the sale of the real property. Respondent was temporarily unable to close the estate because of the press of other business.

### Holding

The record supports Referee's findings. There is no excuse for failure to follow the statutory mandates of filing the inventory and appraisal or late filing of the inheritance report so as to incur the substantial penalty. There is absolutely no excuse for refusal to turn over the file when replaced as counsel. The complaint regarding cross-examination of the witness is ridiculous in view of the fact that it was Respondent's fault that he was not represented by counsel at the hearing where she testified. Finally, with respect to Judge Young having initiated the complaint, we find this to be fully in compliance with the Code of Judicial Conduct, Canon 3 B(3): "A judge should take or initiate appropriate disciplinary measures against a judge or lawyer for unprofessional conduct of which the judge may become aware." In *Dana*, 415 N.W.2d at 823, an attorney attempted the

same defense and it was summarily rejected. Then, as now, we noted that "our ultimate concern must be protection of the public from further wrongdoing by the lawyer."

### MINNIE CHASE MATTER

#### Findings

Respondent filed a case for Arthur and Minnie Chase seeking compensation from the City of Rapid City for their home which was included in the properties condemned after the disastrous flood of 1972. Arthur Chase died in 1983 and probate was filed on September 2, 1983. Probate was still open as of December 30, 1986. The case lay dormant an unreasonable amount of time. The Flood Plain case was dismissed on appeal for failure to timely file briefs; reinstatement was denied. The client had refused a settlement offer on counsel's advice. Nevertheless, Minnie is satisfied with Respondent's representation.

#### Conclusions

The conduct of Respondent violated the following DRs:

   DR 1–102(A)(6)—adversely reflected on fitness to practice law;

   DR 6–101(A)(3)—neglect of matters entrusted to him.

#### Answer

Again, this was a complaint of Judge Young, not the client. Any negligence was occasioned by his heart attack.

#### Holding

The record supports Referee's findings. The long delays are inexcusable. If the heart attack was so disabling, Respondent should have referred the matter to other counsel. *Riccio v. Committee on Professional Standards*, 75 A.D.2d 687, 426 N.Y. S.2d 887 (1980) (suspension for among other things, failure to withdraw from representation of convicted person with pending

---

6. The daughter, a Texas resident, had accompanied her mother, a Florida resident and the sole beneficiary, on several trips to South Dakota to

attempt to get Respondent to finalize the proceedings.

appeal after lawyer's open-heart surgery required absence from office for several months). As we have noted in the Parker Estate, it was the duty of Judge Young to report Respondent's misconduct.

## LEROY F. AND MARILYN M. KESSEL MATTER

### Findings

Respondent put both parties into bankruptcy, although Leroy was the only one on the debt. Respondent convinced Kessels that a Chapter 11 reorganization was not a "real bankruptcy" and that their credit would be better after reorganization. He failed to timely file application for fees and when other counsel (Fousek) took over and sought discovery with respect to delayed application for fees, Respondent failed to comply with a discovery order and a subpoena duces tecum, resulting in an order directing deposit of fees received in Fousek's trust account. Respondent was financially unable to comply and was then held in contempt for failure to comply and barred from further appearances in Bankruptcy Court in South Dakota.

### Conclusions

The conduct of Respondent violated the following DRs:

DR 1–102(A)(4)—conduct involving dishonesty, misrepresentation;

DR 1–102(A)(5)—prejudicial to the administration of justice;

DR 1–102(A)(6)—adversely reflected on fitness to practice law.

### Answer

The complaint is without merit because Fousek followed Respondent's reorganization plan, but did not file it until a year after he took over the case.

### Holding

The record supports Referee's findings. The manner or results of Fousek's subsequent handling of the reorganization are not at issue here. Respondent offers no excuse for the serious allegations of misconduct.

## ILA MARIE GRUWELL MATTER

### Findings

Respondent undertook to terminate a real estate partnership for his client but never completed the dissolution. This inaction resulted in financial harm to the client. Next, Respondent undertook bankruptcy proceedings, but again failed to timely file for fees. When Fousek replaced him, he failed to comply with the discovery proceedings with the same results noted in the Kessel matter.

### Conclusions

The conduct of Respondent violated the following DRs:

DR 1–102(A)(5)—prejudicial to the administration of justice;

DR 1–102(A)(6)—adversely reflected on fitness to practice law;

DR 7–101(A)(1)—intentionally failed to seek lawful objectives of client through reasonably available means.

### Answer

Complaint is without merit. It was brought on by Respondent's secretary. Fousek's management resulted in liquidation of client's property, rather than survival.

### Holding

The record supports Referee's findings. Respondent seemed intent on saving client from what he perceived was her husband's alleged attempts to deplete her property. Again, Fousek's handling of the case is not before us in this proceeding.

## FREDRICK KLUSMAN

### Findings

Respondent accepted employment in a Chapter 11 bankruptcy proceeding. He permitted his client to sell assets without court approval. This is another instance where Respondent failed to timely apply for fees and failed to comply with the discovery proceedings. His action produced

the same results noted in the Kessel matter.

### Conclusions

The conduct of Respondent violated the following DRs:

DR 1–102(A)(5)—prejudicial to the administration of justice;

DR 1–102(A)(6)—adversely reflected on fitness to practice law.

### Answer

Complaint was founded on Respondent's failure to appear at one meeting of creditors, the notice of which remained on his secretary's desk and he was not aware of it.

### Holding

The record supports Referee's findings. The failure to appear at the meeting may have precipitated this complaint; however, it was only one of a number of deficiencies noted by Referee, none of which Respondent has explained.

## HUGHES COUNTY TREASURER

### Findings

For payment of sheriff's fees, Respondent gave treasurer an insufficient funds check dated November 22, 1985. He did not make good on the check until May 2, 1986.

### Conclusions

The conduct of Respondent violated the following DR:

DR 1–102(A)(6)—adversely reflected on fitness to practice law.

### Answer

Respondent makes no response to this charge.

### Holding

The record supports Referee's findings. The lapse of over five months indicates that the offense was far more than mere happenstance and is inexcusable conduct.

## RICHARD H. MAGUIRE

### Findings

Respondent accepted representation of client, d/b/a Black Hills Mountain Resort, in a Chapter 11 bankruptcy proceeding. For his retainer he accepted a conveyance of a one-tenth interest in mineral rights that had a value of $15,000 to $18,000, but grew through development and discovery of gold to a value of $250,000 by 1985. Shortly after receipt of this property, he reconveyed the interest to his sons. Again Respondent failed to timely file application for fees. After he was relieved of employment some two years later, and attempted to file, successor counsel (Fousek) sought to recover the mineral interest. Fousek and his co-counsel attempted a discovery deposition, but Respondent failed to bring all the records as directed in the subpoena duces tecum. He supposedly left to get the records, but did not return until late in the day. On application of Fousek, the Bankruptcy Court struck Respondent's application for fees, and directed deposit of the fees received in Fousek's trust account. Because of the transfer to his sons, and apparently because Respondent did not want the interest or its value to become an issue in his pending marital problems, he did not comply. He was then barred from further practice, as has been previously noted. More importantly, after being dismissed and discharged from the case, Respondent filed a "Motion to Stay Further Proceedings" using information received in confidence to the disadvantage of the client and to his own advantage. Further, in an action to quiet the title to the mineral interest, Respondent permitted a default judgment to be entered. Thereafter, he secured the aid of another attorney to try and have the default set aside. In support of that motion, he executed an affidavit to the effect that legal notice of intent to take default judgment had not been given to him. At the hearing on the motion, the clerk's file contained a return of service showing personal service of the notice by a deputy sheriff.

## Conclusions

The conduct of Respondent violated the following DRs:

DR 1–102(A)(5)—prejudicial to the administration of justice;

DR 1–102(A)(6)—adversely reflected on fitness to practice law;

DR 4–101(B)(1)—knowingly revealing a confidence of a client.

## Answer

Respondent took the mineral interest which he said was worth about $3600, while the going rate for bankruptcy retainers in Rapid City was $5000. His first interest was filing the bankruptcy so as to protect the client. When he later prepared a retainer agreement, the client refused to sign it because the value of the interest had gone up due to discovery of gold on the property. He turned down a $50,000 offer because he had conveyed to his sons, one of whom was a minor. He did not want to sell because he was having marital difficulties, and he did not want his wife to get ahold of the proceeds.

Respondent refused to go along with his client's plan to deal with the creditors outside of Bankruptcy Court, so the client obtained the list from Respondent's secretary and went over to Fousek and proceeded to pay creditors without disclosure statements and without notice or court order as required. Respondent then sought the stay to bring to the Bankruptcy Court's attention the apparent fraud on the part of his client. Fousek threatened that if Respondent did not reconvey the mineral interest, he would lodge a complaint with the State Bar. Then Respondent's secretary gathered the four other clients he had in bankruptcy reorganizations and packed them off to Fousek, who then persuaded them to complain to the State Bar. Fousek also undertook the discovery proceedings to secure information from Respondent's records that was confidential. Respondent claims that he was also disabled by a heart attack for a period of nine months. The affidavit was not intended to mislead the court because the court obviously had the record on the notice before it.

## Holding

The record supports Referee's findings. We will comment later on the purely procedural aspects of the charges regarding the bankruptcy handling. One of the most serious charges against Respondent in this entire matter appears to be the use of the Motion to Stay to use confidential information that he had received from his client to expose his client's alleged improper acts to the Bankruptcy Court. The apparent motive appears to have been to strike at Fousek who had enticed so many clients away. Clearly, he was using the motion as a means of vindicating himself, regardless of the possible results to his client. Also, the false affidavit regarding notice is very serious. While Respondent now says that it should not be considered serious because the trial court had the record, it appears that Respondent misses entirely the serious ethical breach committed when he signed the self-serving affidavit which was false.

## DORMAN PETERSON ESTATE

### Findings

Respondent opened the estate in December of 1977, and it remained open as of January 1988. Respondent collected $10,000 in fees for the probate and for a subsequent bankruptcy that he recommended, which accomplished nothing and did not serve any purpose. However, the widow has withdrawn the complaint.

### Conclusions

The conduct of Respondent violated the following DRs:

DR 1–102(A)(6)—adversely reflected on fitness to practice law;

DR 6–101(A)(3)—neglected a legal matter entrusted to him.

### Answer

The complaint is unfounded and complainant has attempted to withdraw it. The widow is again a client.

*Holding*

The record supports Referee's findings. Though the client may have withdrawn her complaint, for whatever reason, this does not relieve us of our duty to protect other members of the public from the Respondent. Nor does it explain or justify the fact that an estate was open for a period of ten years, an unnecessary bankruptcy proceeding was filed and Respondent has apparently collected some $10,000 without any authority or approval of the respective courts before whom the matters were being litigated.

## SUPPLEMENTAL HOLDINGS

█ In totality, the record supports by a clear and undoubted preponderance of the testimony the findings of Referee and his conclusions that Respondent has violated a number of the Canons of the Code of Professional Responsibility and their underlying Disciplinary Rules. In case after case, Respondent has demonstrated conduct which adversely reflected on his fitness to practice law and which was prejudicial to the administration of justice.

We, first of all, comment on the bankruptcy practice as it was carried on by Respondent, who apparently fancied himself to be somewhat of an expert. In addition to the testimony regarding Respondent's deficiencies as related by Fousek,[7] there is also the testimony by deposition of Andrew J. Schmid (Schmid), an attorney for the United States Trustee's Office, whose duties included supervision of bankruptcy estates in South Dakota. Schmid had supervised several cases in which Respondent was involved. He testified regarding several areas where Respondent had been delinquent in preparation of filings and complying with bankruptcy rules. In particular, Respondent apparently did not properly nor timely file applications for employment and for fees. In Schmid's opinion, Respondent did not understand bankruptcy rules, did not have bankruptcy knowledge nor bankruptcy experience. Schmid further

pointed out specific instances in the Kessel, Gruwell and Klusman cases [8] to support his opinion. He further testified that it was based on these instances that he had requested the Bankruptcy Judge to bar Respondent from bankruptcy practice. From our reading of the record, Respondent was apparently adept at securing substantial retainer fees and initiating the filing, but was woefully deficient in following up properly. Unfortunately, he apparently spent the retainers before they were properly allowed, so that when he was called to account, he could not produce the money to comply with the court orders.

Additionally, we find Respondent's conduct in filing the motion in the Maguire bankruptcy and the affidavit in the quiet title action to be very disturbing. They clearly demonstrate a propensity on the part of Respondent to use any tactic to achieve his end, be it ethical or otherwise.

█ Having examined and approved Referee's report with regard to the acts of misconduct, we now turn to the question of the appropriate discipline to be imposed upon Respondent. SDCL 16–19–35 provides that misconduct shall be grounds for:

(1) Disbarment by the Supreme Court;

(2) Suspension by the Supreme Court for an appropriate fixed period of time, or for an appropriate fixed period of time and an indefinite period concurrently or thereafter to be determined by the condition imposed by the judgment. No suspension shall be ordered for a specific period in excess of three years;

(3) Placement on a probationary status by the Supreme Court for a stated period, or until further order of the Court, with such conditions as the Court may specify;

(4) Public censure by the Supreme Court; or

(5) Private reprimand by the disciplinary board.

Referee's primary recommendation was for a suspension from the practice of law

---

7. Fousek's expertise appears to have arisen from his experience as a law clerk to the Bankruptcy Judge.

8. Schmid was not involved in the Maguire case.

for a period of three years and for an indefinite period thereafter until Respondent successfully passes the South Dakota Combined Multi–State Bar Examination, Essay Examination and Multi–State Professional Responsibility Examination. Additionally, Referee recommended terms and conditions, including: the return of all files and documents of clients; reimbursement to the State Bar and appropriate authorities for all costs of this proceeding and those of any readmission proceeding; satisfactory restitution to the Bankruptcy Court and all clients for all fees ordered deposited; and that Respondent seek and obtain counseling and evaluation for stress and related emotional problems and report the results to the State Bar of South Dakota.

Referee's recommendations track pretty much the recommendations of the Disciplinary Board, as found in their formal accusation. At the oral argument, counsel for Board advised us, however, that Board now seeks disbarment.

We need not give deference to Referee's or Board's recommendation for sanctions. The ultimate decision for discipline of members of the State Bar rests with this court. *Dana,* 415 N.W.2d at 822. Respondent had ample notice of the numerous charges made against him and opportunity to defend against them. *In re Kunkle,* 88 S.D. 269, 218 N.W.2d 521 (1974), *cert. denied* 419 U.S. 1036, 95 S.Ct. 521, 42 L.Ed.2d 312 (1974). At oral argument he became aware that Board then sought disbarment and had opportunity to respond at oral argument and by his written objections which we permitted him to interpose after argument. *Dixon v. State Bar of California,* 32 Cal.3d 728, 187 Cal.Rptr. 30, 653 P.2d 321 (1982) (where respondent advised of all charges against him, no violation of due process rights if respondent not notified before Supreme Court hearing that State Bar would request disbarment); *see also* C. Wolfram, Modern Legal Ethics § 3.4.2 (1986).

In weighing Referee's recommendations, we are mindful of the goal of proceedings such as this:

The purpose of disciplinary proceedings is not to punish but to remove from the profession those attorneys whose misconduct has proved them unfit to be entrusted with duties and responsibilities belonging to the office of an attorney so that the public may be protected from further wrongdoing. Disbarment is warranted when it is clear that the protection of society requires such action or where the maintenance of respect for courts and judges or the respectability of the legal profession itself demands such action.

*Matter of Discipline of Crabb,* 416 N.W.2d 258, 259 (S.D.1987); *Matter of Walker,* 254 N.W.2d 452 (S.D.1977).

Referee made several findings pertinent to his recommendation. He specifically found that:

1. Respondent was considerably stressed by the separation from his wife in 1983 and the divorce in 1985.

2. Respondent had the responsibility for raising and educating his three sons.

3. Respondent developed emotional and stress problems which contributed toward his suffering a heart attack or coronary problem of some kind on August 16, 1986.

4. Respondent's financial problems rendered him virtually without financial support by the spring of 1986.

5. Respondent's emotional, financial, physical and other problems contributed toward a condition that impaired his ability to focus upon his obligations to diligently represent his clients commencing in at least 1985.

In closing, Referee commented that, from his personal observation of Respondent's appearance, manner and demeanor, he was convinced that Respondent was presently unable to effectively function as a lawyer.

In his response, Respondent attributes all of his problems to the alleged machinations of Fousek, apparently aided and abetted by Respondent's own secretary. Nowhere does Respondent acknowledge that he, personally, ever made a mistake; this, despite his failure to timely and properly

file bankruptcy papers and the dismissal of a state court appeal for failure to timely file an appellate brief.

Respondent also makes mention of the heart attack, which at one point in the record he denominated an adrenaline attack. Although there is some evidence that Respondent was hospitalized only two or three days as a result of the condition, the record is devoid of any medical evidence to support this claimed heart attack. In any event, when such a disabling event occurred, it was Respondent's duty to secure other counsel to properly handle his clients' cases. *Riccio*, 426 N.Y.S.2d 887.

From the record before us, as well as our observation of Respondent, it is our opinion that the Disciplinary Board's initial recommendation and the Referee's recommended sanction are far too lenient. This is especially true considering Respondent's utter incomprehension that he has done anything wrong. Therefore, we order the following sanctions: (1) Effective immediately, a judgment shall forthwith be entered disbarring Respondent, revoking his license to practice, and striking his name from the Clerk's roll of attorneys; (2) Respondent shall immediately comply with the notice provisions of SDCL 16–19–78 through 16–19–80 inclusive, and return all files and documents of clients; (3) Respondent shall pay for all of the cost of this action under SDCL 16–19–70; (4) As a precondition to any petition for reinstatement, Respondent must prove he has satisfied the following terms: (a) make satisfactory restitution to the Bankruptcy Court and all clients for all fees ordered deposited, (b) reimburse the State Bar and appropriate authorities for all cost of this proceeding and those of any readmission proceeding; (c) demonstrate that he has obtained counseling, evaluation, and treatment for stress and related emotional problems.

It will be so ordered.

WUEST, C.J., and SABERS and MILLER, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

I respectfully dissent. *See, Matter of Trygstad*, 435 N.W.2d 723, 725–6 (S.D.1989) (Henderson, J., specially concurring), for scope of review on disciplinary proceedings.

Circuit Court Judge, Richard D. Hurd, acting as referee for this Court, entered an extensive REPORT TO THE COURT including Findings of Fact, Conclusions of Law, and Recommendation.

This Justice would not disturb the findings of the referee, for the referee saw and heard the witnesses and the findings do appear to be supported by the evidence.

Additionally, unlike the majority, I would adopt the referee's recommendation for the three year suspension from the practice of law; and that, thereafter, Stanton comply fully with the various recommendations of Judge Hurd concerning reimbursement, restitution, counseling, and reexamination of his legal skills via an essay examination. Judge Hurd consumed lengthy and conscientious judicial time in arriving at his recommendation to this Court.

David Stanton lost his wife, yet raised his sons. He developed emotional trauma, financial and physical problems, including a heart attack, and this obviously influenced the judgment of Circuit Judge Hurd. Mindful that we are all susceptible to great mental anxiety in this profession, and coupled with Stanton's personal problems, I would attempt to temper justice with mercy, believing that his professional life is redeemable.